ON REHEARING EN BANC
KELLY, Circuit Judge,
joined by TACHA, Chief Judge, EBEL, HENRY, BRISCOE, LUCERO, and MURPHY, Circuit Judges, and joined in part by HARTZ, O’BRIEN, McCONNELL, TYMKOVICH, GORSUCH, and HOLMES, Circuit Judges.
We granted rehearing en banc primarily to consider under what circumstances, if any, an excessive force claim is subsumed in an unlawful arrest claim. The panel opinion upheld the district court’s denial of qualified immunity except for one excessive force claim, which the panel determined warranted qualified immunity. Cortez v. McCauley, 438 F.3d 980, 1002 (10th Cir.2006). We reject the notion that an excessive force claim is subsumed in an unlawful arrest claim in the facts presented by this case. Because our conclusion necessitates a change in some of the analysis, we vacate the panel opinion. Our jurisdiction to hear this appeal from the denial of partial summary judgment on qualified immunity grounds arises under 28 U.S.C. § 1291. See Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). We affirm in part and reverse in part.
Plaintiffs-Appellees, Rick Cortez and Tina Cortez, filed suit alleging claims pursuant to 42 U.S.C. § 1983 as well as claims under New Mexico law, seeking damages from employees of the Bernalillo County Sheriffs Department and the Board of County Commissioners of the County of Bernalillo, New Mexico (“Board”). The Plaintiffs alleged, inter alia, that the Defendants violated the Plaintiffs’ Fourth Amendment rights by (1) unlawfully arresting and interrogating the Plaintiffs; (2) using excessive force on the Plaintiffs; and (3) unreasonably searching the Plaintiffs’ home. The district court denied the Defendants’ motion for partial summary judgment as to Defendants McCauley, Gonzales, Sanchez, and Covington. With respect to the other Defendants, Bowdich and the Board, the court concluded that the Plaintiffs had made a meritorious showing under Fed.R.Civ.P. 56(f). Consequently, these Defendants’ motions for partial summary judgment were denied without prejudice pending further discovery.

Background

On May 26, 2001, at 12:24 a.m., the Bernalillo County Sheriffs Department re *1113 ceived a telephone call from a nurse at Saint Joseph’s Hospital alerting that Raquel Villegas (“Ms.Villegas”), had brought her two-year-old daughter to the hospital alleging that the child had complained that her babysitter’s “boyfriend”[1] had “hurt her pee pee.” In response to this allegation, the Defendants McCauley, Gonzales, Sanchez, and Covington were dispatched to Plaintiffs’ residence. The officers did not wait to receive the results of the medical examination of the child, did not interview the child or her mother, and did not seek to obtain a warrant.
At approximately 1:00 a.m., the deputies made contact with the Plaintiffs. Rick Cortez was asleep when he was suddenly awakened by noises and lights in his fenced back yard. He heard a knock on the front door. Wearing only a pair of shorts, Rick Cortez opened the front door and saw two police officers through the closed screen door. He repeatedly inquired what was going on. The officers did not answer but instead ordered him to exit his house. As he opened the screen door and began to leave the house, the officers seized him, handcuffed him, read him his Miranda[2] rights, and placed him in the back of a patrol car where he was subjected to questioning.
Tina Cortez was awakened by her husband as he got out of bed. Shortly after Rick Cortez left the bedroom, she followed him. She reached the front door just in time to watch the Defendants handcuff her husband and place him in the back of the patrol car. Tina Cortez headed toward the bedroom in order to make a telephone call, but before she could complete the call, Defendant McCauley entered the home, seized her by the arm, and physically escorted her from her home. The officer placed her in a separate patrol car where she was subjected to questioning. Defendant McCauley did allow Tina Cortez to use his cell phone. Both Rick and Tina Cortez indicate that an officer seized the keys to their house, locked the door, and would not let them return for approximately an hour. They allege that when they returned, the Defendants informed them that their dog had been maced and his eyes needed to be washed out. ApltApp. 23, 63, 64.
Defendants performed a warrantless search of the home, purportedly to find additional children that might be present and to eliminate the possibility of any unknown threat to officer safety. During the subsequent interrogations of the Plaintiffs, the Defendants learned that Tina Cortez managed a small day care facility in which she took care of several children. The Defendants further learned that Ms. Ville-gas had a verbal altercation with the Plaintiffs after the Plaintiffs informed her that they would no longer take care of her child. Additionally, while providing his statement, Rick Cortez also informed the officers that his handcuffs were too tight and caused excessive pain. Despite his declaration and the fact that Rick Cortez supposedly was not under arrest, the officers never loosened the handcuffs.
As these events unfolded at the Cortez residence, Officer Zuniga and Detective Foster made contact with Ms. Villegas at the hospital. Ms. Villegas provided an unsworn written statement in which she described the events that led to her accu *1114 sation. She also recounted a verbal dispute she had with the Plaintiffs. Additionally, Detective Foster was informed by the nurse who conducted the examination that “no evidence of penile penetration was present.” Further, the nurse identified two potential sources of the child’s vaginal irritation.[3]
Because the hospital did not find any evidence of molestation, the Plaintiffs were released from detention and permitted to reenter their home. The dispatch report for the incident indicated that they were released sometime between 1:49 a.m. and 2:16 a.m. on May 26, 2001. Rick Cortez was never charged with a crime associated with the allegations of Ms. Villegas.[4]
Based on this early morning encounter with law enforcement officers, the Plaintiffs filed suit. Appellants McCauley, Gonzales, Sanchez, Covington, and Bowdich moved for summary judgment on grounds of qualified immunity as to the § 1983 claims against them in their individual capacities. Defendants McCauley, Gonzales, Sanchez and Covington asserted they did not commit an unreasonable search and seizure against either Plaintiff and that excessive force was not used against either Plaintiff. Defendant Bowdich argued he could not be held liable in his supervisory capacity. Shortly after filing the motion, the Defendants above joined with the Board and moved that discovery be stayed pending the outcome of their motion for summary judgment. On March 17, 2004, the district court denied the Defendants’ motion for summary judgment. This appeal followed.

Standard of Review

“Because of the underlying purposes of qualified immunity, we review summary judgment orders deciding qualified immunity questions differently from other summary judgment decisions.” Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir.2001). When a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff, who must first establish that the defendant violated a constitutional right. Reynolds v. Powell, 370 F.3d 1028, 1030 (10th Cir.2004). “If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.” Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If, on the other hand, a violation has been shown, the plaintiff must then show that the constitutional right was clearly established. See id. “This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition.... ” Id. “The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation....” Id. at 202, 121 S.Ct. 2151. Summary judgment based on qualified immunity is appropriate if the law did not put the officer on notice that his conduct would be clearly unlawful. Id. (citing Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).
We have held that, for a right to be clearly established, “there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have *1115 found the law to be as the plaintiff maintains.” Medina v. City of Denver, 960 F.2d 1493, 1498 (10th Cir.1992). The Supreme Court has explained that “officials can still be on notice that their conduct violates established law even in novel factual circumstances.” Hope v. Pelzer, 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002).
The district court’s denial of qualified immunity is a question of law which we review de novo. Bisbee v. Bey, 39 F.3d 1096, 1099 (10th Cir.1994). We review the evidence in the light most favorable to the nonmoving party. Id. at 1100. Summary judgment is appropriate only “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law.” Fed.R.Civ.P. 56(c).

Analysis

The district court held that both Plaintiffs were arrested and searched and that genuine issues of material fact existed as to the presence of probable cause. It also rejected an investigative detention rationale for the Defendants’ conduct, noting that the Defendants had “not articulated any specific facts that led them to believe Plaintiffs presented a threat to anyone’s safety at the time of the arrest or were about to destroy evidence of a crime.” Aplt.App. 178. In a qualified immunity appeal, we are required to consider those facts which the district court found were sufficient to support the denial of the motion for summary judgment. See Behrens v. Pelletier, 516 U.S. 299, 313, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996). Our interlocutory jurisdiction is limited to legal questions drawn from facts that are deemed undisputed for appellate purposes. Johnson v. Jones, 515 U.S. 304, 313, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995); Mitchell, 472 U.S. at 528, 105 S.Ct. 2806. We believe our discussion will be clearer if each Plaintiff is discussed separately, along with the actions taken against that Plaintiff.
I. Plaintiffs’ Fourth Amendment Claim Against Unreasonable Seizure
A. Legal Framework
In Oliver v. Woods, 209 F.3d 1179, 1186 (10th Cir.2000), we stated “[t]he Supreme Court has identified three types of police/citizen encounters: consensual encounters, investigative stops, and arrests.” [5] “Consensual encounters are not seizures within the meaning of the Fourth Amendment and need not be supported by suspicion of criminal wrongdoing.” Id.
An investigative detention is “a seizure within the meaning of the Fourth Amendment but, unlike an arrest, it need not be supported by probable cause.” Id. An officer “can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks probable cause.” Id. For an officer to have reasonable suspicion to seize an individual, the officer “must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.” Id.
A warrantless arrest is permissible when an officer “has probable cause to believe that a person committed a crime.” Romero v. Fay, 45 F.3d 1472, 1476 (10th Cir.1995). An arrest is distinguished by the involuntary, “highly intrusive” nature of the encounter. Oliver, 209 F.3d at 1186. “[T]he use of firearms, *1116 handcuffs, and other forceful techniques” generally exceed the scope of an investigative detention and enter the realm of an arrest. See United States v. Melendez-Garcia, 28 F.3d 1046, 1052 (10th Cir.1994). “Probable cause to arrest exists only when the facts and circumstances within the officers’ knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.” United States v. Valenzuela, 365 F.3d 892, 896 (10th Cir.2004) (internal quotation marks omitted).
B. Seizure of Rick Cortez
Viewing the facts in the light most favorable to the Plaintiffs, the district court determined that “the scope and duration of a lawful investigative detention was quickly exceeded in this case, and the situation became a full custodial arrest.” Aplt.App. 178. We agree with this characterization as to Plaintiff Rick Cortez. Against this backdrop, we have no difficulty in finding that Rick Cortez has presented facts or allegations showing the Defendants violated a constitutional right, namely the Fourth Amendment right to be free of unreasonable seizure. See Olsen v. Layton Hills Mall, 312 F.3d 1304, 1312 (10th Cir.2002). It appears that the officers: (1) grabbed Rick Cortez, barefoot and wearing only shorts, and pulled him from the doorway of his home; (2) handcuffed him; (3) advised him of his Miranda rights; (4) placed him in the back seat of the locked patrol car; and (5) questioned him while he was in the back seat of the locked patrol car. We also note that the encounter took place after midnight.[6]
In evaluating whether the events leading up to this arrest amount to probable cause, we ask whether an objectively reasonable officer could conclude that the historical facts at the time of the arrest amount to probable cause. Maryland v. Pringle, 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003); Gardenhire v. Schubert, 205 F.3d 303, 318 (6th Cir.2000). Probable cause is based on the totality of the circumstances, and requires reasonably trustworthy information that would lead a reasonable officer to believe that the person about to be arrested has committed or is about to commit a crime. Pringle, 540 U.S. at 371 n. 2, 124 S.Ct. 795. As noted, the only information which arguably implicated Rick Cortez was a statement attributed to a barely-verbal two-year old child that her babysitter’s “boyfriend” had “hurt her pee pee.” The statement was relayed by telephone to the officers, from the nurse, who heard it from the mother who ostensibly heard it from the two-year old. Rather than waiting to receive the results of the medical examination of the child, interview the child or her mother to better understand the circumstances, or seek to obtain a warrant, the officers responded to the statement with an immediate arrest of the babysitter’s husband, Rick Cortez.
Plainly, whether we view it as a need for more pre-arrest investigation because of insufficient information, see Valenzuela, 365 F.3d at 902,[7] or inadequate corroborá *1117 tion, what the officers had fell short of reasonably trustworthy information indicating that a crime had been committed by Rick Cortez. See BeVier v. Hucal, 806 F.2d 128, 128 (7th Cir.1986) (“A police officer may not close her or his eyes to facts that would help clarify the circumstances of an arrest. Reasonable avenues of investigation must be pursued especially when, as here, it is unclear whether a crime had even taken place.”). Based on the facts above, Rick Cortez was arrested without probable cause.[8] This warrantless arrest constitutes a constitutional violation.[9]
Under the second sequential question, we must also find that the right was clearly established when the alleged violation occurred. The law was and is unambiguous: a government official must have probable cause to arrest an individual. See Tennessee v. Garner, 471 U.S. 1, 7, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985); United States v. Watson, 423 U.S. 411, 417-22, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976); Olsen, 312 F.3d at 1312 (warrantless arrest without probable cause violates an arrestee’s clearly established Fourth Amendment rights). Furthermore, it was established law that “the probable cause standard of the Fourth Amendment requires officers to reasonably interview witnesses readily available at the scene, investigate basic evidence, or otherwise inquire if a crime has been committed at all before invoking the power of warrantless arrest and detention.” Romero, 45 F.3d at 1476-77 (footnote omitted); see also Baptiste v. J.C. Penney, Co., 147 F.3d 1252, 1259 (10th Cir.1998) (“[P]olice officers may not ignore easily accessible evidence and thereby delegate their duty to investigate and make an independent probable cause determination based on that investigation.”). In the present case, witnesses were readily available for interviews, physical evidence was available, and a medical diagnosis was forthcoming. Defendants, however, did not: (1) interview the girl, her mother, the nurse, or the doctor; (2) inspect the girl’s clothing for possible signs of sexual assault; or (3) wait for a preliminary report from the doctor. In other words, Defendants conducted no investigation. Instead, *1118 the Defendants relied on the flimsiest of information conveyed by a telephone call.
Defendants rely upon the alleged statement of a two-year-old child which was relayed to them by a nurse, who heard it from the girl’s mother. The fact that hearsay evidence would not be admissible at trial to prove guilt does not make it unusable as a source of probable cause for a warrantless arrest. See United States v. Swingler, 758 F.2d 477, 487 (10th Cir.1985). Defendants have cited the “excited utterance” exception to the hearsay rule contained in Fed.R.Evid. 803(2). Arguably, the statement might also fall within the “medical diagnosis” exception of Fed. R.Evid. 803(4), but there is no need to engage in such analysis. The statement is not being presented for the truth of the matter asserted therein; the issue is whether the officers were justified in relying upon it alone.[10]
That unsubstantiated double-hearsay originating from a two-year-old, standing alone, does not give rise to probable cause should have been patently obvious to any reasonable law enforcement official.[11] Even without prior case law on point, therefore, we would harbor no qualms concluding, based solely on cases like Gamer and Watson, that the officers were on reasonable notice that their actions ran afoul *1119 of the Fourth Amendment. This follows from the fact that the Supreme Court has instructed that “a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful.” United States v. Lanier, 520 U.S. 259, 271, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997); see also Hope, 536 U.S. at 740-41, 122 S.Ct. 2508.
Nonetheless, we have previously held that a bare allegation of wrongdoing, without any investigation, in some circumstances, may not give rise to probable cause. In Baptiste, we affirmed the denial of qualified immunity for officers who relied solely on the statements of store security guards — despite having seen a contradictory security videotape capturing the events in question — to establish probable cause for arrest. Id. at 1254.[12] Notably, we held that there was an unconstitutional arrest lacking probable cause because the officers had relied solely on the statements of individuals who ostensibly witnessed an alleged ctime. Additionally, we held that the illegality of the sole reliance on the security guards’ statements, without additional investigation, was clearly established. Id. at 1258-59. In so doing, we explained that, based on prior case law, “a reasonable officer would have known [that the] failure to investigate violated the constitutional or statutory rights of the plaintiff.” Id. at 1258. Similarly, in the instant case, officers relied, without any investigation, exclusively on the double-hearsay statement of a nurse who had no personal knowledge of the actual facts. In light of Baptiste, the officers were on notice that this uncorroborated double-hearsay statement was insufficient to establish probable cause, especially given that the officers could easily have interviewed the nurse, Ms. Villegas, or the girl before moving to arrest Mr. Cortez.[13]
In Easton v. City of Boulder, 776 F.2d 1441 (10th Cir.1985), we declined to discount the statements to police of a three-year-old and a five-year-old regarding child abuse based solely on their age, despite some apparent inconsistencies and even though such testimony might not be admissible in court. Id. at 1449. We specifically found, however, that the five-year-old’s statement had “corroborated all the facts given by [the three-year-old] ... with respect to the assault [the five-year-old] witnessed.” Id. at 1443. Here, no such corroboration was present. Additionally in Easton, we found that details in both chil-drens’ statements regarding the plaintiffs residence and the site of the assault were independently corroborated by police investigation. Id. at 1450.
United States v. Shaw, 464 F.3d 615 (6th Cir.2006), is a case virtually on all-fours with the instant case with respect to the probable cause inquiry. The panel majority found probable cause wanting for an arrest of the defendant based upon a mother’s hearsay statements to medical personnel later reported to military police. Id. at 626. According to the mother, her *1120 three-year-old son claimed that the defendant “had ‘touched his pee-pee’ ” and that the defendant’s “ ‘pee-pee had touched his butt.’ ” Id. at 618. The examining physician found no evidence of trauma or penetration. The child was not interviewed and no effort was made to corroborate the allegations as reported by the mother. The Shaw panel majority stated:
We are not aware ... of any situation in which the uncorroborated hearsay statement of a child as young as three, standing alone, has been considered sufficient to establish probable cause.
[WJe see no way to affirm the district court’s finding of probable cause in this case without carving out what would amount to an exception to the probable-cause requirement in child-molestation cases. We decline to adopt such an exception.
We hold only that the mother’s bare-bones hearsay accusation in this case, with no corroborating evidence, did not suffice to establish probable cause, and that the ensuing arrest was therefore unlawful.
Id. at 624, 626. Both the panel majority and dissent cited the panel opinion in this case with approval,[14] the Shaw panel majority also recognized that our decision in Easton simply does not support the notion that an uncorroborated hearsay statement of a three-year old involving sexual touching provides probable cause. Shaw, 464 F.3d at 624-26.
In sum, we find that viewing the undisputed facts in the light most favorable to the Plaintiffs, an arrest without probable cause occurred. As we discuss below, no exigent circumstances would justify a warrantless arrest either. This conclusion does not, however, end our analysis. Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity. Romero, 45 F.3d at 1476.[15] Therefore, when a warrantless arrest or seizure is the subject of a § 1983 action, the defendant is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to arrest or detain the plaintiff.
This principle may appear to be in some tension with the equally established principle that “it is a jury question in a civil rights suit whether an officer had probable cause to arrest.” DeLoach v. Bevers, 922 F.2d 618, 623 (10th Cir.1990). The tension is resolved in this case by the essential lack of dispute over the historical, predicate facts. The parties agree on the “what happened” questions. In such a circumstance, for qualified immunity purposes, there is no such thing as a “genuine issue of fact” as to whether an officer “should have known” that his conduct violated constitutional rights. See Pace v. City of Des Moines, 201 F.3d 1050, 1056 (8th Cir.2000).[16] The conduct was either objectively reasonable under existing law or it was *1121 not. Id. We find the officers did not have “arguable probable cause” to arrest Rick Cortez because, as mentioned above, the information relied on to conduct the seizure was not reasonably trustworthy information sufficient on its own to justify the seizure.
While agreeing that probable cause was not present and that this case requires a different result than Easton, a concurring and dissenting opinion repeatedly questions “[w]hat exactly would have put the officers on clear notice that relying on a two-year-old’s statement to support the arrest of Mr. Cortez was impermissible?” C & D Op. at 9 (Gorsuch, J., concurring and dissenting). As a factual matter, it is undisputed that the ostensible purpose of the officers’ visit to the home was “to secure the location of the alleged offender in order to preserve evidence of the alleged molestation so that [they] could obtain a search warrant if necessary pending the findings of the preliminary investigation at the hospital” and to find out “whether Mr. Cortez had access to other children.” Aplt.App. at 56, 122. Settled law makes it clear that probable cause is measured at the moment the arrest occurs and must derive from facts and circumstances based on reasonably trustworthy information. Hunter v. Bryant, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991); Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). No reasonable officer could have believed that the double-hearsay statement of the nurse constituted sufficient facts and circumstances based on reasonably trustworthy information to supply probable cause in these circumstances.[17] We make no apologies for looking at what information the officers possessed against a backdrop of the known progress of their investigation, including the steps that had not been taken at the time Rick Cortez was arrested. The sequence of the investigation that did occur is plainly part of the facts in this case-and it is clear that the officers got ahead of themselves insofar as arresting Rick Cortez, entering the residence and subjecting Tina Cortez to an investigative detention. Of course, additional investigation that does not uncover anything does not aid in a probable cause determination. Likewise, if there is no evidence or only enough for suspicion, the import of our cases is that additional investigation may well be necessary in order to uncover additional evidence and establish probable cause.[18]
The concurring and dissenting opinion of Judge Gorsuch suggests that a reasonable officer would conclude “that a statement emanating from the victim of an alleged sexual assault, with little more, is sufficient to supply probable cause,” based on the holding of Easton and the background law concerning victim statements, and that Ea-ston did not clearly preclude what occurred here. C & D Op. at 9 & n. 7. Easton may be read to hold that ordinarily, the statement of a victim of a crime to police may establish probable cause absent some reason to think the statement not trustworthy. But only if the facts of cases do not matter, would the expansive and incorrect interpretation put forth by the concurring and dissenting opinion be plausible. In Easton, the police twice inter *1122 viewed the children and possessed ample corroborating evidence. In this case, the child was not interviewed by law enforcement once, let alone twice, nor was anyone else prior to the arrest. Although Easton did state that the scrutiny reserved for informants is relaxed for victim-witnesses, it still required reasonably trustworthy information for probable cause in this context. 776 F.3d at 1450. The dicta in Easton that statements of the children could have established probable cause deals with their direct statements to the officers-something not present in this case.
The law was clearly established that the double-hearsay statement of a nurse, based on information allegedly provided by a two-year-old child and reported in a telephone call, does not establish probable cause and that more information is necessary. See Shaw, 464 F.3d at 624 (discussing eases involving child-testimony and noting that the child’s testimony was not the only evidence supporting probable cause). To be sure, we have held that corroboration is not essential for victim-witnesses, though in those cases we have held that the victim’s statements were amply corroborated. See United States v. Patane, 304 F.3d 1013, 1017 (10th Cir.2002), rev’d on other• grounds, 542 U.S. 630, 124 S.Ct. 2620, 159 L.Ed.2d 667 (2004); Easton, 776 F.2d at 1449-1450. Regardless, both Patane and Easton involved statements by victims, not double-hearsay, and both cases noted that no facts suggested an ulterior motive for such statements. Patane, 304 F.3d at 1017; Easton, 776 F.3d at 1450-51.
Our cases suggest a duty to investigate to ascertain information on whether a crime occurred at all.[19] Although the concurring and dissenting opinion of Judge Gorsuch distinguishes the application of the general rules in Romero and Baptiste, which suggest that additional investigation may sometimes be necessary in order to generate information supporting probable cause, precise factual correspondence is not necessary. Anderson v. Blake, 469 F.3d 910, 913-14 (10th Cir.2006). The approach taken by the concurring and dissenting opinion of Judge Gorsuch is tantamount to requiring a case on all fours before government officials could be held liable-all that is required is that “in the light of pre-existing law the unlawfulness must be apparent.” Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); Martin v. Board of County Comm’rs, 909 F.2d 402, 407 (10th Cir.1990). We believe that the duty to investigate prior to a warrantless arrest is obviously applicable when a double-hearsay statement, allegedly derived from a two-year-old, is the only information law enforcement possesses.
C. Seizure of Tina Cortez
We now turn to the seizure of Tina Cortez. Taking the Plaintiffs’ allegations as true, and viewing the evidence in the light most favorable to the Plaintiffs, it appears that Tina Cortez (1) was ordered out of her house by the officers; (2) returned to her bedroom (though it is unclear whether she did so after exiting the house in response to the officers’ orders, or without exiting the house); (3) was physically separated from her telephone by an officer illuminating the bedroom with a flashlight; (4) was taken by the arm and escorted from her home, (5) was placed in the back seat of a locked patrol car; and (6) was questioned by an officer while in the back seat of the locked patrol *1123 car. While in the back seat of the locked patrol car, Tina Cortez was allowed to use an officer’s cell phone. The officers seized the keys to the home and lo'cked it. Again we note that all this occurred after midnight.
The seizure of Tina Cortez was less intrusive than that of Rick Cortez to be sure. She was not advised of her Miranda rights, was not handcuffed, was allowed to use the officer’s cell phone, generally seemed to be subjected to less force than Rick Cortez, and did not seem to be the object of the officers’ primary suspicions. Taking the undisputed facts in the light most favorable to the Plaintiffs, these facts establish an investigative detention. Cf. Muehler v. Mena, 544 U.S. 93, 100, 125 S.Ct. 1465, 161 L.Ed.2d 299 (2005) (making clear that detaining individuals under intrusive conditions does not automatically convert the detention to an arrest).
We again examine the officers’ factual basis. As previously stated, an investigative detention must be based upon reasonable suspicion. The court views the totality of the circumstances to see whether the detaining officer had a “particularized and objective basis” for suspecting legal wrongdoing. United States v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). Just like her husband’s seizure and detention, the seizure and detention of Tina Cortez was based solely on the allegations of a two-year-old girl. The girl’s alleged statement, however, asserted no wrongdoing whatsoever as to Tina Cortez. No facts suggest that any evidence was about to be destroyed or that the Defendants or anyone else was somehow endangered by Tina Cortez. See Walker v. City of Orem, 451 F.3d 1139, 1149-1150 (10th Cir.2006) (90-minute detention of non-suspects with no exigencies could not be justified on an investigative detention rationale and violated the Fourth Amendment).
An investigative detention must be supported by reasonable suspicion. Hiibel v. Sixth Judicial Dist. Court of Nevada, 542 U.S. 177, 185, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004). Here there was none. Likewise, the law is clearly established that warrantless entry into the home by law enforcement is not permitted absent exigent circumstances. Brigham City v. Stuart, — U.S.—, 126 S.Ct. 1943, 1947, 164 L.Ed.2d 650 (2006); Payton v. New York, 445 U.S. 573, 590, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). As we discuss below, there were no exigent circumstances. Therefore, we find that Tina Cortez has demonstrated that a clearly established constitutional right has been violated. Consequently, the Defendants are not entitled to qualified immunity as to her wrongful seizure claim, as the existence of neither reasonable suspicion nor “arguable reasonable suspicion” has been shown.
II. Exigent Circumstances
A. Legal Framework
The Defendants contend that they had probable cause to arrest Rick Cortez and that exigent circumstances were present in this case that allowed them to enter the Cortez home, seize Rick and Tina Cortez, and conduct a search of the house. Aplt. Br. at 14. Exigent circumstances may exist when there is a “plausible claim of specially pressing or urgent law enforcement need,” Illinois v. McArthur, 531 U.S. 326, 331, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001), for example the imminent destruction of evidence, see Georgia v. Randoph, 547 U.S. 103 n. 6, 126 S.Ct. 1515, 1525 n. 6, 164 L.Ed.2d 208 (2006). Obviously, officers may not simply recite urgent needs without factual support. Otherwise, the exception swallows the rule.[20] Exigent cir *1124 cumstances in an emergency situation exist when: (1) the law enforcement officers have objectively reasonable grounds to believe that there is an immediate need to protect their lives or others, and (2) “the manner and scope of the search is reasonable.” United States v. Najar, 451 F.3d 710, 718 (10th Cir.2006); see also United States v. Huffman, 461 F.3d 777, 783 (6th Cir.2006) (in relying upon the “risk-of-danger” exception to the warrant requirement, the government “must show that there was a risk of serious physical injury posed to the officers or others that required swift action”).
B. Application
The Defendants have offered nothing, beyond innuendo and speculation, to establish objectively reasonable grounds of an emergency, i.e., an immediate need to protect their lives or others from serious injury or threatened injury. They have failed to articulate any specific facts that led them to believe the Plaintiffs posed a threat to the officers or others. In fact, the record indicates the opposite conclusion is appropriate. The record establishes that the Plaintiffs were asleep at the time the Defendants arrived at the home. The interior, as well as exterior lights, were off. Rick Cortez answered the door wearing only a pair of shorts. He cooperated with the officers as they voiced their commands. No evidence in the record suggests the presence of other people in the home. Additionally, no evidence in the record establishes actual or threatened injury to any person or imminent violence. The only basis for the search was the unsubstantiated allegation of the nurse regarding a child at another location. We do not believe this evidence establishes the existence of emergency conditions at the Cortez home. Therefore, we agree with the district court that a finding of exigency was inappropriate.[21]
Additionally, we have held that warrantless entry into homes is allowed if: (1) clear evidence of probable cause exists of, (2) a serious crime where destruction of evidence is likely, (3) any such search is limited in scope, and (4) it is supported by clearly defined indicators of exigency that are not subject to police manipulation. United States v. Scroger, 98 F.3d 1256, 1259 (10th Cir.1996). In spite of the fact that the Defendants failed to establish factors one, two, or four, they argue that the warrantless entry into the home was constitutional. We affirm the ruling of the district court denying qualified immunity in this regard.
*1125 III. Excessive Force Claims
Plaintiffs also allege a violation of their rights under the Fourth and Fourteenth Amendments to be free from the use of excessive force. Specifically, Plaintiffs claim that Defendants used excessive force in seizing them. Aplt.App. 25; Aplee. Br. 21-24.
A. Legal Framework
“[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.” Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The degree of physical coercion that law enforcement officers may use is not unlimited, however, and “all claims that law enforcement officers have used excessive force ... in the course of an arrest, investigatory stop, or other ‘seizure’ of a free citizen should be analyzed under the Fourth Amendment and its ‘reasonableness’ standard.... ” Id. at 395, 109 S.Ct. 1865. In defining the parameters of this reasonableness standard, the Graham Court stated:
Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual’s Fourth Amendment interests against the countervailing governmental interests at stake.... Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application ... its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.
490 U.S. at 396, 109 S.Ct. 1865 (internal citations and quotations omitted); see also Gamer, 471 U.S. at 8-9, 105 S.Ct. 1694 (“[T]he question [is] whether the totality of the circumstances justified] a particular sort of ... seizure.”).
The Graham Court continued:
The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.... With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: Not every push or shove, even if it may later seem unnecessary in the peace of a judge’s chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — -about the amount of force that is necessary in a particular situation.
As in other Fourth Amendment contexts, however, the reasonableness inquiry in an excessive force case is an objective one: the question is whether the officers’ actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. An officer’s evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer’s good intentions make an objectively unreasonable use of force constitutional.
Graham, 490 U.S. at 396-97, 109 S.Ct. 1865 (internal citations and quotations omitted). Furthermore, we have previously held that “the interests protected by the Fourth Amendment are not confined to the right to be secure against physical harm; they include liberty, property, and privacy *1126 interests — a person’s sense of security and individual dignity.” Holland ex rel. Overdorff v. Harrington, 268 F.3d 1179, 1196 (10th Cir.2001) (internal quotation omitted).
We analyze the force applied in this case in the context of an arrest (Rick Cortez) and an investigative detention (Tina Cortez). While the nature of the inquiry under either alternative does not differ, see Graham, 490 U.S. at 396, 109 S.Ct. 1865, the benchmark for what is reasonable does differ, see United States v. Merritt, 695 F.2d 1263, 1274 (10th Cir.1982). This is in part because police have historically been able to use more force in making an arrest than in effecting an investigative detention. Cf. United States v. Perdue, 8 F.3d 1455, 1464 (10th Cir.1993) (“[HJistorically, the maximum level of force permissible in a standard Terry stop fell short of placing the suspect in ‘custody’ for purposes of triggering Miranda.”).
Thus, the excessive force inquiry evaluates the force used in a given arrest or detention against the force reasonably necessary to effect a lawful arrest or detention under the circumstances of the case. Thus, in a case where police effect an arrest without probable cause or a detention without reasonable suspicion, but use no more force than would have been reasonably necessary if the arrest or the detention were warranted, the plaintiff has a claim for unlawful arrest or detention but not an additional claim for excessive force.
We first consider Defendants’ use of force against Rick Cortez, then Defendants’ use of force against Tina Cortez. For the reasons stated below, we reverse the district court’s denial of qualified immunity to Defendants on the claim that Defendants used excessive force in their dealings with Rick Cortez but affirm with respect to the claim that Defendants used excessive force in their dealings with Tina Cortez.
B. Defendants’ Use of Force Against Rick Cortez
We take Plaintiffs’ allegations as true and view the evidence in the light most favorable to them. See Kirkland v. St. Vrain Valley Sch. Dist, 464 F.3d 1182, 1188 (10th Cir.2006). It appears that Defendants (1) grabbed Rick Cortez by the arm and pulled him from the doorway of his home; (2) handcuffed him; (3) placed him in the back seat of a locked patrol car — all in the middle of the night, and (4) ignored his pleas that the handcuffs were too tight and hurting him.
As discussed above, if Plaintiffs’ allegations are taken as true, Rick Cortez was arrested. See Kaupp v. Texas, 538 U.S. 626, 631, 123 S.Ct. 1843, 155 L.Ed.2d 814 (2003) (“A ... boy was awakened ... at three in the morning by at least three police officers.... He was taken out in handcuffs, without shoes, dressed only in his underwear in January, placed in a patrol car, driven to the scene of a crime and then to the sheriffs offices, where he was taken into an interrogation room and questioned. This evidence points to arrest. ...”). Because it also appears, when the evidence is construed in the light most favorable to Plaintiffs, that Defendants lacked probable cause for this arrest, we held above that Defendants are not entitled to qualified immunity on Plaintiffs’ claim that Rick Cortez was seized unreasonably. Because the properly supported summary judgment facts suggest an arrest, we analyze the seizure of Rick Cortez as an arrest. We hold that the officers are entitled to qualified immunity on this claim.
Initially, we reject the idea contained in the panel opinion that a plaintiffs right to recover on an excessive force claim is dependent upon the outcome of an unlawful *1127 seizure claim. See Cortez, 438 F.3d at 995-96. Relying on Eleventh Circuit cases, the panel opinion held that “a plaintiff may not recover on an independent excessive force claim merely because force was applied during an unlawful seizure.” Id. at 996. See Jackson v. Sauls, 206 F.3d 1156, 1171 (11th Cir.2000); Williamson v. Mills, 65 F.3d 155, 158-59 (11th Cir.1995) (per curiam). Thus, were a plaintiff to prevail on an unlawful arrest claim, the plaintiff would not be allowed to recover on an excessive force claim arising out of the arrest. Properly applied, such a rule might control where a plaintiffs excessive force claim is dependent solely on the absence of the power to arrest or detain. See Bashir v. Rockdale County, Ga., 445 F.3d 1323, 1332 (11th Cir.2006). We need not decide that issue, however, because Rick and Tina Cortez have made broader allegations concerning the circumstances of their seizures that might suggest excessive force. See Cortez, 438 F.3d at 1003-04 (Henry, J., concurring in part and dissenting in part).
Even under the Eleventh Circuit’s rule, “[w]hen properly stated, an excessive force claim presents a discrete constitutional violation relating to the manner in which an arrest was carried out, and is independent of whether law enforcement had the power to arrest.” Bashir, 445 F.3d at 1332. A contrary interpretation would conflict with the Supreme Court’s direction that courts engage in careful balancing and examine excessive force claims under a Fourth Amendment reasonableness standard as discussed above. See Graham, 490 U.S. at 396-95, 109 S.Ct. 1865. Moreover, a contrary interpretation risks imposing artificial limits on constitutional claims without any basis other than a fear that such a distinction might be too fíne for a jury (a fear we do not agree with).
We hold that in cases involving claims of both unlawful arrest and excessive force arising from a single encounter, it is necessary to consider both the justification the officers had for the arrest and the degree of force they used to effect it. If the plaintiff can prove that the officers lacked probable cause, he is entitled to damages for the unlawful arrest, which includes damages resulting from any force reasonably employed in effecting the arrest. If the plaintiff can prove that the officers used greater force than would have been reasonably necessary to effect a lawful arrest, he is entitled to damages resulting from that excessive force. These two inquiries are separate and independent, though the evidence may overlap.[22] The plaintiff might succeed in proving the unlawful arrest claim, the excessive force claim, both, or neither.[23]
*1128 Should the officers move for qualified immunity on an excessive force claim, a plaintiff is required to show that the force used was impermissible (a constitutional violation) and that objectively reasonable officers could not have not thought the force constitutionally permissible (violates clearly established law).
We now consider Plaintiffs’ claim that Defendants used excessive force against Rick Cortez in arresting him. In his affidavit, Rick Cortez contends that he was “grabbed and pulled out of the house” by one of the officers, and, after being handcuffed and put into the back seat of a patrol car, he complained that the handcuffs were too tight.
I told the officer in the car with me that the handcuffs were too tight and hurting me. No action was taken to loosen the handcuffs. The handcuffs left red marks on both of my wrists for several days. My wrists were so marked that they were visible to casual observers.
AplLApp. 88. Defendants argue that because Rick Cortez was accused of committing a violent felony, the Defendants’ actions toward him, including ignoring his plea concerning the handcuffs, were appropriate under the circumstances. Aplt. Br. at 19. The Defendants also argue that because no proof of injury was provided either from health care providers or photographs, the self-serving contentions of the Plaintiffs will not suffice. Aplt. Br. at 19.
Although the severity of the alleged offense is a factor in evaluating an excessive force claim, a court must also consider officer safety concerns and whether the suspect cooperates or resists. Graham, 490 U.S. at 396, 109 S.Ct. 1865. There is no indication in the record that Rick Cortez actively resisted seizure or attempted to evade seizure by flight. Rick Cortez opened the door of his residence to police voluntarily. Aplt.App. 88, 96. Although Rick Cortez briefly asked Defendants what was going on before he complied with their commands to exit the residence, ApltApp. 87, this does not amount to resistance. Likewise, there is no indication in the record that Rick Cortez posed an immediate threat to the safety of Defendants or others. He came to his front door wearing only shorts and cooperated fully. Nothing suggests that the Plaintiffs were armed or that other persons besides the Plaintiffs were present.
We have little difficulty concluding that a small amount of force, like grabbing Rick Cortez and placing him in the patrol car, is permissible in effecting an arrest under the Fourth Amendment. See Atwater v. City of Lago Vista, 532 U.S. 318, 354-55, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001) (noting that a normal lawful custodial arrest where one is handcuffed, placed in a patrol car, and taken to the police station may be inconvenient and embarrassing, but not violative of the Fourth Amendment); Graham, 490 U.S. at 396, 109 S.Ct. 1865 (“Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.”). Although the dignity aspects of this arrest are troubling, specifically hauling Rick Cortez (clad only in his shorts) into the patrol car in the *1129 middle of the night without any explanation, the police were investigating a serious felony and claimed a need for quick action to separate the accused from any other children that might be in the home.
The closer issue is whether the failure to adjust Rick Cortez’s handcuffs during an arrest constitutes excessive force. In some circumstances, unduly tight handcuffing can constitute excessive force where a plaintiff alleges some actual injury from the handcuffing and alleges that an officer ignored a plaintiffs timely complaints (or was otherwise made aware) that the handcuffs were too tight.[24] See, e.g., Lyons v. Xenia, 417 F.3d 565, 575-76 (6th Cir.2005); Herzog v. Village of Winnetka, 309 F.3d 1041, 1043 (7th Cir.2002); Palmer v. Sanderson, 9 F.3d 1433, 1436 (9th Cir.1993). Although Rick Cortez complained to the officer that the handcuffs were too tight, the summary judgment record presents too little evidence of any actual injury. We believe that a claim of excessive force requires some actual injury that is not de minimis, be it physical or emotional.[25] The only evidence in the record is his affidavit that the handcuffs left red marks that were visible for days afterward. Aplt.App. at 88. This is insufficient, as a matter of law, to support an excessive force claim if the use of handcuffs is otherwise justified.
We hold that the force established does not exceed what would have been reasonable to effectuate a lawful arrest under these circumstances. Therefore, whether or not the arrest itself was lawful, Plaintiffs’ claim that Defendants used excessive force against Rick Cortez should not survive summary judgment. Even taking Plaintiffs’ allegations as true and viewing the evidence in the light most favorable to Plaintiffs, Plaintiffs have not established that Defendants’ use of force against Rick Cortez violated his Fourth and Fourteenth Amendment right to be free from the use of excessive force. In other words, the Defendants are entitled to qualified immunity on Rick Cortez’s excessive force claim because no constitutional violation occurred. We therefore reverse the district court’s denial of summary judgment to *1130 Defendants as to Plaintiffs’ claim that Defendants used excessive force against Rick Cortez in connection with an arrest.
C. Defendants’ Use of Force Against Tina Cortez
Taking Plaintiffs’ allegations as true, and viewing the evidence in the light most favorable to Plaintiffs, it appears that Defendants (1) entered Tina Cortez’s home in the middle of the night without consent, a warrant or exigent circumstances; (2) physically separated Tina Cortez from her telephone; (3) took her by the arm; (4) escorted her from her home; (5) took the keys to her home and locked the door, and (6) placed her in the locked back seat of a patrol car. Tina Cortez has alleged no physical injury based on Defendants’ use of force against her. Like her husband Rick, she has provided an affidavit that she was intimidated by the circumstances and the officers’ show of force. Aplt.App. at 90.
As we discussed above, when Plaintiffs’ allegations are taken as true, Tina Cortez was subjected to an investigative detention. Because Plaintiffs allegations suggest the investigative detention was not justified, we held that Defendants are not entitled to qualified immunity on Plaintiffs’ claim that Tina Cortez was seized unreasonably.
For purposes of qualified immunity, we have little doubt that Tina Cortez has alleged a constitutional violation concerning excessive force that survives summary judgment. When Plaintiffs’ allegations are taken as true, Plaintiffs have demonstrated that Defendants’ use of force against Tina Cortez violated her Fourth and Fourteenth Amendment right to be free from the use of excessive force in the context of an investigative detention. This right was clearly established at the time of Defendants’ actions.
We have recognized that, given evidence of officer safety concerns, officers may in appropriate circumstances take steps to protect their personal safety and maintain the status quo during a Terry stop. Gallegos v. City of Colorado Springs, 114 F.3d 1024, 1030-31 (10th Cir.1997); Perdue, 8 F.3d at 1463. Although Terry stops are normally non-intrusive, we have indicated that law enforcement may (1) display some force, (2) place suspects on the ground, (3) use handcuffs, or (4) detain suspects in law enforcement vehicles, even in the absence of probable cause. Perdue, 8 F.3d at 1463. At the same time, “an unreasonable level of force transforms a Terry detention into an arrest requiring probable cause.” United States v. Shareef 100 F.3d 1491, 1507 (10th Cir.1996); see also Florida v. Royer, 460 U.S. 491, 499, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (plurality op.).
Keeping in mind that Tina Cortez was never the target of the investigation, no evidence suggests that a reasonable law enforcement officer would suspect that she posed a threat. See Melendez-Garcia, 28 F.3d at 1052-53. She was unarmed and gave no indication of flight. Though she was attempting to make a telephone call when an officer physically separated her from her telephone, she did not resist and was escorted to the locked patrol car where interrogation commenced. Again, no evidence suggests that this level of intrusiveness was warranted for officer safety concerns.
Defendants assert that if they had left Tina Cortez in her home alone, she could have destroyed evidence, but again they have provided no particularized facts to support this allegation. See United States v. Acosta-Colon, 157 F.3d 9, 17 (1st Cir.1998). This is not a situation where officers needed to neutralize certain persons while conducting an investigation. See *1131 Shareef, 100 F.3d at 1507. Simply because Tina Cortez was seized does not mean that the force used in effecting the seizure was excessive. Rather, viewing the facts in the light most favorable to Tina Cortez, the level of force the defendants used against her was unreasonable in relation to the threat that she presented and the surrounding circumstances. Although it is generally permissible to hold a person by the arm during an investigative detention, the Defendants have not articulated any reasonable safety concerns or flight concerns that would justify the extra force that they used against Tina Cortez — escorting her from her bedroom in the middle of the night and keeping her in a locked patrol car for nearly an hour.
We also hold that the law was clearly established. With respect to Mrs. Cortez, the officers involved should have known that they were permitted to use only as much force as was necessary to secure their own safety and maintain the status quo. See United States v. Hensley, 469 U.S. 221, 235, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985) (officer is authorized to take such steps as necessary to protect personal safety and maintain status quo). The force used in this case bears no relationship to those purposes. Under prior case law in the Tenth Circuit, officers are required to articulate specific justifications for uses of force during an investigative detention, such as locking a person in a police car. See, e.g., Melendez-Garcia, 28 F.3d at 1052-53; Perdue, 8 F.3d at 1464. Moreover, we recently made it clear that personal security and individual dignity interests, particularly of non-suspects, should also be considered.[26] Holland, 268 F.3d at 1195.
Although Holland was decided a few months after the events in this case, it relied upon Bivens v. Six Unknown Named Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), as do we. There, the Court held that the plaintiff could recover money damages for injuries based upon Fourth Amendment violations by federal officials. Id. at 397, 91 S.Ct. 1999. Those injuries included those attendant to an excessive force claim where the plaintiff claimed “humiliation, embarrassment, and mental suffering” occasioned by a warrantless arrest without probable cause and excessive force. Id. at 389-90. In pertinent part, the plaintiff alleged that he was arrested in front of his family and the entire family was threatened with an arrest. Id. at 389. Physical contact is not required for an excessive force claim — patently unreasonable conduct is.[27] Martin, 909 F.2d at 406. Though several prior cases finding excessive force have involved pointing guns and handcuffing bystanders for brief periods of time in the process of executing warrants or searches, Holland, 268 F.3d at 1192, *1132 Baker v. Monroe Twp., 50 F.3d 1186, 1193 (3d Cir.1995), McDonald v. Haskins, 966 F.2d 292, 294-295 (7th Cir.1992), here there was no warrant or authority to search, let alone to force Tina Cortez out of her house in the middle of the night, to take her keys, and to hold her against her will for an hour in a locked patrol car— even if one of the officers allowed her to use his phone to communicate with the outside world. Considering the factors as a whole in the light most favorable to the Plaintiffs, there was a substantial and unjustified invasion of Tina Cortez’s personal security that hardly can be considered de minimis. See Baker, 50 F.3d at 1193 (evaluating all factors including the length of detention).[28]
IY. Claims Against Defendant Bow-dich
Finally, the Defendants maintain that the Plaintiffs have no evidence to support a claim against Defendant Bowdich for his supervision of Defendant Gonzales and therefore summary judgment should have been granted for Defendant Bowdich. The Plaintiffs contend that the district court was correct in applying Fed.R.Civ.P. 56(f), which states, “[sjhould it appear from the affidavits of [the nonmoving party] that the party cannot ... present by affidavit facts essential to justify the party’s opposition, the court may refuse ... judgment or may order continuance to permit ... discovery.”
The standard of review, despite the Defendants’ assertion to the contrary, is abuse of discretion. See Guthrie v. Sawyer, 970 F.2d 733, 738 (10th Cir.1992); Pasternak v. Lear Petroleum Exploration, Inc., 790 F.2d 828, 833 (10th Cir.1986); Weir v. Anaconda Co., 773 F.2d 1073, 1081 (10th Cir.1985). The Defendants assert that the mere declaration that discovery is incomplete or that specific facts necessary to oppose summary judgment are unavailable is not enough to invoke Rule 56(f). See Pasternak, 790 F.2d at 832. This is true, albeit irrelevant. In Pasternak, no party filed an affidavit or notified the court of any necessity of conducting additional discovery. Furthermore, and most importantly, in Pasternak the court did not stay discovery. In the present case, the district court ruled that the Plaintiffs “made a meritorious showing under Fed.R.Civ.P. 56(f)” and “[f]urther, discovery has been stayed pending a ruling on the other individual County Defendants’ claims ... thereby precluding Plaintiffs from conducting necessary discovery.” AplhApp. 169-70. Clearly, this is not a case involving a ‘mere assertion’ of incomplete discovery. Consequently, we áre unable to find that the district court abused its discretion in denying the motion without prejudice.
Y. Conclusion
For the foregoing reasons, we AFFIRM the district court’s denial of the motion for partial summary judgment on based on *1133 qualified immunity as to Plaintiff Rick Cortez’s claim of an unlawful seizure (arrest), but REVERSE as to his claim of excessive force in connection with such an arrest. We AFFIRM the district court’s denial of qualified immunity as to Tina Cortez as set forth above. The case is remanded for further proceedings consistent with this Opinion.

. Plaintiff Rick Cortez is actually the husband of the babysitter Tina Cortez.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Miranda warnings are required for custodial interrogation occasioned by an arrest, but not for questioning during an ordinary investigative detention. Berkemer v. McCarty, 468 U.S. 420, 440, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984); California v. Beheler, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983) (per curiam).

. The nurse noted that the child had "urine stained underwear on, which could irritate her vagina.” The nurse also noted bubble bath as a potential irritant.

. The Defendants state in their appellate brief and supplemental brief on rehearing en banc that Rick Cortez "may” have violated the child digitally. Aplt. Br. at 5; Aplt. Supp. Br. at 4-5. No evidence in the record supports this completely speculative assertion.

. These categories are not static and may escalate from one to another. See United States v. Shareef, 100 F.3d 1491, 1500 (10th Cir.1996).

. See Tennessee v. Garner, 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) (holding that reasonableness depends in part on when the seizure is made).

. A concurring and dissenting opinion "do[es] not doubt for a moment that additional investigation would have been a good idea,” but then suggests that considering that possibility is ''second-guessing” the officers. C & D Op. at 1139-40 (Gorsuch, J. concurring in part, and dissenting in part). The reason for the lack of doubt surely is because of the absence of probable cause in this case; merely because officers are not required to do a more thorough investigation once they have probable cause "does not suggest that an officer has no duty to investigate an alleged crime before *1117 making an arrest.” Gardenhire, 205 F.3d at 318.

. When the officers seized Rick Cortez, one of the officers apparently told him that he was not being arrested but that he had merely been placed in investigative detention. Aplt. App. 56. Therefore, the officers may have believed that they were not effecting an arrest but rather an investigative detention. The officers' subjective beliefs are irrelevant. See United States v. Charley, 396 F.3d 1074, 1080 (9th Cir.2005). See also Graham v. Connor, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (applying the same principle to the issue of excessive force). Defendants characterize the encounter between the Defendants and both Plaintiffs as an investigative detention but regardless contend that they had probable cause to arrest Rick Cortez. Aplt. Br. at 13. Essentially, their argument is that they had probable cause to arrest Rick Cortez and place him in investigative detention. Aplt. Reply Br. at 6; but see Florida v. Royer, 460 U.S. 491, 499, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (plurality op.) (an investigative detention may be violative of the Fourth Amendment absent probable cause where it approaches the conditions of an arrest). Before the district court, the Defendants argued:
The County Defendants could have arrested Plaintiff Rick Cortez and taken him to the Detention Center that very night. Law enforcement officers do not need to wait for the convenience of an alleged child molester before they effectuate their duties. On the contrary, there exists an inherent exigency when law enforcement receives a report of child molestation.
Aplt.App. at 110. As did the district court and the panel, we reject this sweeping argument, untethered to basic Fourth Amendment principles.

. The en banc court is unanimous that probable cause was lacking to effect a warrantless arrest of Rick Cortez.

. A concurring and dissenting opinion reminds us that hearsay may be relied upon in establishing probable cause. C & D Op. at 1140 (Gorsuch, J., concurring and dissenting). No one disputes that hearsay (with sufficient indicia of reliability) may be considered as part of the totality of the circumstances in making a probable cause determination. See Illinois v. Gates, 462 U.S. 213, 233, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The double-hearsay statement in this case could be considered; but it was insufficient, in and of itself, to support probable cause.
That concurring and dissenting opinion suggests that the officers had other facts corroborating the statement. C & D Op. at 1140-41 (Gorsuch, J., concurring and dissenting). It relies on the fact that the mother (whom that concurring and dissenting opinion assumes knew the child best) believed a crime occurred given that she took the child to the hospital, hospital authorities (presumably, the nurse) reported the allegation to law enforcement, and the child's statement could be consistent with how a child might report being molested. The record does not contain any express evidence that the officers were aware of the nature of the mother’s relationship with the child, her opinion concerning the complaint or that the nurse made some sort of decision concerning the allegations. The fact that New Mexico state law requires prompt reporting and action on complaints of child abuse, see N.M. Stat. Ann. § 32A-4-3, does not suggest, let alone require, non-compliance with the requirements of the Fourth Amendment, see Roska ex rel. Roska v. Peterson, 328 F.3d 1230, 1249, 1252 (10th Cir.2003). Merely because the officers claimed that they were investigating a serious felony and sought to separate the accused from any other children that might be in the home does nothing to provide a factual basis for such a claim as we discuss below. See also supra, n. 8. The concurring and dissenting opinion of Judge Gorsuch comes very close to saying that, because the allegation was made, repeated by others, and acted on by law enforcement personnel, this particular statement was trustworthy.

. Again, we do not suggest a per se rule that unsubstantiated double-hearsay testimony can never give rise to probable cause. There, in fact, may be situations in which a double-hearsay statement involves individuals or circumstances of sufficient trustworthiness to give rise to probable cause. Cf. Baptiste, 147 F.3d at 1256 (explaining that an officer has probable cause when he "receives information about an alleged offense from a witness who it seems reasonable to believe is telling the truth ...” (internal quotation omitted)). What should have given any reasonable law enforcement officer pause, in this case, is that the allegation originated with a two-year old child, was passed along from child to mother to nurse and finally to law enforcement, and was precipitously acted upon to arrest without further confirmation or investigation. That probable cause to arrest was lacking under such a scenario should have been obvious.

. In Baptiste, we held that ''[o]fficers may not rely solely on a security guard's allegations when the officers have before them an exact replication of all the information on which the guard's allegations are based.” 147 F.3d at 1257. Similarly, in the instant case, it was unreasonable for the officers to rely on the nurse’s double-hearsay statement about what the girl said, when they could have interviewed the girl or her mother directly.

. In fact, the need for investigation was much greater in this case, where officers relied solely on the statement of one individual who had not witnessed the alleged crime, than in Baptiste, where officers relied on the statements of multiple individuals who had actually witnessed the alleged crime.

. The dissent in Shaw indicated its approval of the probable cause analysis in Cortez. Shaw, 464 F.3d at 631, 633 (Sutton, J. dissenting).

. Some courts have referred to this standard as “arguable probable cause.” See, e.g., Jones v. Cannon, 174 F.3d 1271, 1283 n. 3 (11th Cir.1999).

. Of course, this court lacks jurisdiction over an appeal from the denial of a defendant's summary judgment order based on qualified immunity insofar as that order determines whether or not the pretrial record sets forth a genuine issue of fact for trial. Johnson, 515 U.S. at 319-20, 115 S.Ct. 2151. We may exercise jurisdiction over such an order when we are presented with "neat abstract issues of law.” Clanton v. Cooper, 129 F.3d 1147, 1153 (10th Cir.1997).

. This may explain why as a factual matter the Defendants at the time maintained that they merely were placing Mr. Cortez in investigative detention and told him that he was not being arrested. Aplt.App. 56.

. We agree that once probable cause is established, an officer is not required to continue to investigate for exculpatory evidence before arresting a suspect. Baker v. McCollan, 443 U.S. 137, 145-46, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); Ahlers v. Schebil, 188 F.3d 365, 371 (6th Cir.1999). In this case, however, probable cause was lacking in the first place.

. While it is true that Plaintiffs should cite to what constitutes clearly established law, we are not restricted to the cases cited by them. Elder v. Holloway, 510 U.S. 510, 513-14, 114 S.Ct. 1019, 127 L.Ed.2d 344 (1994). Whether law is clearly established is a legal question, reviewed de novo, with full knowledge of the law. Id. at 516, 114 S.Ct. 1019.

. For similar reasons, we reject Defendants' argument that New Mexico law requiring *1124 prompt investigation of child abuse allegations necessarily creates an "inherent exigency.” See supra, nn. 8 & 10.

. The district court recited our prior test concerning exigent circumstances in an emergency. Aplt.App. 77-78. We previously held that exigent circumstances exist when: (1) the law enforcement officers have reasonable grounds to believe that there is an immediate need to protect their lives or others; (2) the search is not motivated by an intent to arrest and seize evidence; and (3) there is some reasonable basis, approaching probable cause, to associate an emergency with the area or place to be searched. See Najar, 451 F.3d at 718. In light of Brigham City v. Stuart, — U.S. —, 126 S.Ct. 1943, 1948, 164 L.Ed.2d 650 (2006), which rejected subjective intent as a factor and did not expressly require probable cause, we reformulated the test in Najar essentially to consist of the first objective element and a requirement that the manner and scope of the search be reasonable. Najar, 451 F.3d at 718. The district court decided the issue on the lack of objective reasonableness for an emergency, viz. an immediate need to protect the lives or safety of anyone, as do we. Aplt.App. at 185 ("There is no particularized and objective basis for concluding that there was any imminent danger to persons inside or outside the residence, or that any evidence was about to be destroyed, or that any suspect was about to flee or escape.”).

. The concurring and dissenting opinion of Judge Hartz suggests that "we would do better simply to recognize one cause of action ...: a claim for invasion of Fourth Amendment rights of the person." C & D Op. at 1133 (Hartz, J., concurring and dissenting). That cause of action would consider the information available to an officer, what action such information justified (such as detention or handcuffing), and then assess damages for any action not so justified as excessive force. Id. at 1134. Whereas the panel opinion collapsed excessive force claims into unlawful seizure claims, this approach appears to collapse unlawful seizure claims into excessive force claims. We remain convinced that the two rights are separate and plaintiffs may proceed under either or both, depending on the facts. See Bashir, 445 F.3d at 1332. The implementation of the suggested approach of Judge Hartz-a bifurcated trial process, with a break in-between so that a trial court could conduct a qualified immunity analysis and decide what conduct could be unlawful sounds somewhat complex, if not supported by precedent.

. A similar analysis applies to claims of unlawful detention and excessive force: in cases involving claims of both unlawful detention and excessive force arising from a single encounter, it is necessary to consider both the justification the officers had for the detention *1128 and the degree of force they used to effect it. If the plaintiff can prove that the officers lacked reasonable suspicion, he is entitled to damages for the unlawful detention, which includes damages resulting from any force reasonably employed in effecting the detention. If the plaintiff can prove that the officers used greater force than would have been reasonably necessary to effect a lawful detention, he is entitled to damages resulting from that excessive force. These two inquiries are separate and independent, though the evidence may overlap.

. In Hannula v. City of Lakewood, 907 F.2d 129 (10th Cir.1990), we analyzed a tight handcuffing claim under a substantive due process standard that required that the force be inspired by malice or by excessive zeal that shocks the conscience. Id. at 131-32. We held that, for purposes of qualified immunity, the plaintiff had not shown the violation of a clearly established right, given a lack of evidence of physical injury or “apparent physical damage to the plaintiff's wrists.” Id. at 132. Merely because the handcuffs caused pain was deemed insufficient. Id.; see also Bella v. Chamberlain, 24 F.3d 1251, 1257-58 (10th Cir.1994) (analyzing excessive force claim that occurred prior to a seizure under a due process standard and observing that this circuit had yet to decide whether an excessive force claim without physical injury could succeed). Hannula is of limited value because the proper analysis is that contained in Graham, 490 U.S. at 396-95, 109 S.Ct. 1865, which does not require a showing that the force shocks the conscience or was motivated by malice. Moreover, we subsequently held that proof of physical injury manifested by visible cuts, bruises, abrasions or scars, is not an essential element of an excessive force claim, though the absence of injury in the context of the totality of the circumstances may suggest the absence of excessive force. Holland, 268 F.3d at 1195.

. Plaintiffs alleged that Defendants use of excessive force caused such injury. Aplt.App. at 26, ¶ 29. In order to recover on an excessive force claim, a plaintiff must show: (1) that the officers used greater force than would have been reasonably necessary to effect a lawful seizure, and (2) some actual injury caused by the unreasonable seizure that is not de minimis, be it physical or emotional. See Tarver v. City of Edna, 410 F.3d 745, 752 (5th Cir.2005) (allegations of de min-imis physical harm from handcuffing were insufficient, nor did plaintiff demonstrate "that he suffered psychological injury from the handcuffing”).

. Referencing the tort of intentional infliction of emotional distress, Judge Gorsuch's concurring and dissenting opinion appears to require egregious force or severe injury, physical or not. C & D Op. at 1147-48 n. 16 (Gorsuch, J. concurring in part and dissenting in part). Such an approach is inconsistent with the Fourth Amendment’s protection of "liberty, property and privacy interests — a person's 'sense of security' and individual dignity.” Holland, 268 F.3d at 1195. Moreover, it would conflict with Holland which required a totality of the circumstances approach to excessive force claims and went so far as to indicate that verbal abuse (while not stating a claim in and of itself) could be considered as part of the totality of the circumstances. Id. at 1194.

. Thus, we reject the notion that this case is about an otherwise reasonable detention that could have been conducted in a less intrusive manner. C & D Op. at 1147 (Gorsuch, J., concurring and dissenting). The manner of this investigative detention simply was not within the necessary range of reasonableness. See Melendez-Garcia, 28 F.3d at 1052-53.

. The concurring and dissenting opinion of Judge Gorsuch reduces Tina Cortez’s claim to one where she seeks compensation based only on "a transient feeling of intimidation during an investigative detention,” one not involving physical abuse or a display of animus against her. C & D Op. at 1148, 1149 (Gorsuch, J., concurring in part and dissenting in part). This is too narrow. Suffice it to say, the undisputed and objective facts of this case (when viewed in the light most favorable to the Plaintiffs, not the Defendants) are sufficient for a jury to find actual injury that is not de minimis given the interests protected by the Fourth Amendment and the course of events described by the Plaintiffs. The concurring and dissenting opinion simply disregards the emotional or psychological injury that a jury might find resulting from intimidation, fear for personal safety, loss of liberty and privacy, associated with being removed from the residence in the middle of the night, escorted to a police car, and locked therein for over an hour.