FILED
United States Court of Appeals
Tenth Circuit

April 14, 2008

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

EDDIE JAMES LOWERY; AMANDA
MARIE LOWERY,

     Plaintiffs - Appellees,

     v.

THE COUNTY OF RILEY; RILEY
COUNTY BOARD OF
COMMISSIONERS; RILEY COUNTY
LAW ENFORCEMENT
DEPARTMENT, also known as Riley
County Police Department; CITY OF
MANHATTAN; MANHATTAN
BOARD OF CITY COMMISSIONERS;
CITY OF OGDEN; OGDEN BOARD
OF CITY COMMISSIONERS; JOHN
DOES 1-10, police officers and
non-uniformed employees of the Riley
County Police Department, in their
individual capacities; RICHARD ROES
1-10, supervisory police officers of the
Riley County Police Department, in
their individual capacities; RILEY
COUNTY LAW ENFORCEMENT
AGENCY, The Law Board; WILLIAM
WATSON,

     Defendants,

     and

HARRY L. MALUGANI; DOUGLASS
JOHNSON, in their individual
capacities; ALVAN JOHNSON;

No. 06-3369

STEVE FRENCH; LARRY
WOODYARD,

         Defendants - Appellants.

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D. Ct. No. 04-CV-3101-JTM-DWB)**

Jeffrey A. Bullins, Holbrook & Osborn, P.A., Overland Park, Kansas, appearing for Appellants.

Nick Brustin, Cochran Neufeld & Scheck, LLP, New York, New York (Barry A. Clark, Clark & Kellstrom, Chtd., Manhattan, Kansas; Barry Scheck and Monica R. Shah, Cochran Neufeld & Scheck, LLP, New York, New York; and Craig J. Altenhofen, Hornbaker, Altenhofen, McCulley & Alt, Chartered Lawyers, Junction City, Kansas, with him on the brief), appearing for Appellees.

Before **O'CONNOR**,[*] Associate Justice (Ret.), **HENRY**, Chief Circuit Judge, and **TACHA**, Circuit Judge.

**TACHA**, Circuit Judge.

In 1982, Eddie James Lowery was convicted after a jury trial in the District Court of Riley County, Kansas, of rape, aggravated battery, and aggravated burglary. His convictions were secured primarily on the basis of an unrecorded confession he made to Riley County Police Officers Harry Malugani and

---

[*] The Honorable Sandra Day O'Connor, Associate Justice of the United States Supreme Court (Ret.), sitting by designation pursuant to 28 U.S.C. § 294(a).

Douglass Johnson. He served ten years in prison and, upon release, spent another ten years as a registered sex offender. In 2003, however, DNA testing proved that Mr. Lowery did not commit the crimes. Thereafter, the same court vacated each conviction and sentence, declaring him actually innocent of the crimes. Mr. Lowery and his daughter Amanda then filed this action in federal district court under 42 U.S.C. § 1983 and Kansas state law against many of the individuals and municipal entities responsible for his arrest, conviction, and incarceration. The district court denied the defendants' motion for summary judgment based on qualified immunity, which the defendants now appeal.

## I. BACKGROUND

The following facts are set forth in the light most favorable to Mr. Lowery as the nonmoving party. During the early morning hours of July 26, 1981, Mr. Lowery was involved in a car accident in the vicinity of Arta Kroeplin's house in Ogden, Kansas. At approximately the same time, Ms. Kroeplin reported that a burglar broke into her home and raped her. She knew that she was attacked by a single assailant, but she could not describe him because he covered her face with blankets during the attack. Indeed, she could not even identify the man's race and could only say he had a medium build. She reported that, during the attack, the rapist struck her three times in the head with a knife. An investigation revealed that the perpetrator entered through the back door of Ms. Kroeplin's home by cutting or tearing through the door screen.

The following day, Officer Malugani, who had learned of Mr. Lowery's accident, contacted Mr. Lowery and asked him to come down to the police station to talk. Mr. Lowery believed that Officer Malugani wanted to talk to him about the car accident. Because Mr. Lowery did not have transportation, Officer Malugani and Officer Johnson picked him up at his house at 4:00 p.m. and drove him to the Riley County Police Department.

When they arrived at the station, the officers took Mr. Lowery to an interview room and advised him of his *Miranda*[1] rights. Mr. Lowery was not told whether he was under arrest. He signed a written waiver of rights at approximately 4:30 p.m. The officers then questioned Mr. Lowery about the rape for forty-five minutes. Thereafter, the officers obtained written consent from Mr. Lowery to search his home. The record does not indicate whether the officers uncovered incriminating evidence. After completing the search, the officers asked if Mr. Lowery could return to the station the following day to take a polygraph examination. Mr. Lowery said that he could, although he might need to be picked up again.

Officer Malugani picked up Mr. Lowery at approximately 8:20 a.m. on July 28, 1981. Mr. Lowery had not slept much the night before and had not eaten breakfast that morning. When they arrived at the station, the officers again took Mr. Lowery to an interview room where he signed a waiver of his *Miranda* rights.

---

[1]*Miranda v. Arizona*, 384 U.S. 436 (1966).

The officers again questioned Mr. Lowery about the rape. Mr. Lowery asked for a lawyer. Officer Malugani told Mr. Lowery that because he was not under arrest, he did not need a lawyer at that time. Mr. Lowery was not provided with a lawyer.

From approximately 9:30 a.m. to 12:30 p.m., Mr. Lowery took a polygraph exam administered by Officer Allen Raynor. Mr. Lowery did not admit any involvement in the crime during the examination. The defendants claim the exam results, which have since disappeared, indicated deception on Mr. Lowery's part. Following the polygraph, Officers Malugani and Johnson further interrogated Mr. Lowery. He again denied committing the crimes, but after Officer Malugani loudly and continually insisted that he had, Mr. Lowery became very confused and emotionally upset. He began crying and then responding affirmatively to the officers' suggestive questions in the hope that they would put him in jail and he would finally be able to speak with a lawyer.

For example, knowing that the perpetrator had broken the screen door, the officers asked Mr. Lowery: "How did you get into the house? Did you cut the screen door or bust it open and pull the screen back?" Mr. Lowery responded that he busted it open with his hands. Knowing that Ms. Kroeplin had been struck in the head, the officers asked Mr. Lowery if he hit her with a knife or with a vase. Mr. Lowery said he hit her with a knife. Knowing that Ms. Kroeplin's face had been covered during the attack, the officers asked Mr. Lowery whether he covered

her face with a blanket or a pillow. Mr. Lowery said a blanket. According to Mr. Lowery, these are just some of the suggestive and leading questions the officers asked him. At the conclusion of the questioning, Mr. Lowery was arrested and charged with rape, aggravated battery, and aggravated burglary.

The officers then prepared their official report describing the confession. Although Mr. Lowery alleges that he largely adopted the officers' suggestions as to how he committed the crime, the officers represented in their contemporaneous report and in their communications with the prosecutor[2] that Mr. Lowery's confession was credible because he revealed, without prompting or suggestion, nonpublic facts that only the perpetrator of the rape could have known. In addition, the report contained other "admissions" that Mr. Lowery did not, in fact, make. For example, Mr. Lowery told the officers that he broke into the house through the front door. The perpetrator, however, gained entry through the back door, and the officers repeatedly maintained that Mr. Lowery told them he broke in through the back.

At trial, the prosecution relied heavily on the officers' report and their testimony describing Mr. Lowery's confession. The prosecution also presented evidence that Mr. Lowery, along with thirty-eight percent of the population, had

---

[2]The officers also testified at Mr. Lowery's trial that he volunteered nonpublic facts during his confession. The officers are, however, absolutely immune from any claim arising out of their testimony at trial, even if that testimony is perjurious. *Briscoe v. LaHue*, 460 U.S. 325, 328 (1983).

the same blood type as the perpetrator. The jury could not reach a unanimous verdict. A second trial was held, and this time the jury convicted Mr. Lowery on all counts.

In 2003, the District Court of Riley County, Kansas vacated Mr. Lowery's convictions and declared him actually innocent of the crimes based on DNA evidence that excluded him as the rapist. Mr. Lowery then filed this action under § 1983 and Kansas state law. The claims relevant to this appeal include: (1) § 1983 claims against Officers Malugani and Johnson for violating his right to due process by coercing his confession and by failing to adequately investigate the crimes, and for violating his Fourth and Fourteenth Amendment rights by fabricating evidence and by maliciously prosecuting him; (2) § 1983 claims against Officers Malugani's and Johnson's supervisors for failing to train police officers and for conspiring to violate Mr. Lowery's constitutional rights; and (3) a § 1983 claim against all defendants for depriving Mr. Lowery and Amanda of their right to familial association.[3] The defendants filed a motion for summary judgment on the basis of qualified immunity, which the district court denied with respect to all claims. The defendants now appeal. For the reasons that follow, we dismiss for lack of jurisdiction the defendants' appeal of the denial of qualified immunity as to the claims for coercion, failure to investigate, fabrication of

[3]Several additional claims raised in the first amended petition have been dropped by the plaintiffs or are otherwise not before the Court in this interlocutory appeal. Those claims are not discussed herein.

-7-

evidence, and malicious prosecution.  We reverse the district court's denial of qualified immunity on Mr. Lowery's and Amanda's claim for loss of familial association.  Finally, we affirm in part and reverse in part the district court's denial of qualified immunity as to the supervisory liability claims.

## II.  DISCUSSION

Government officials performing discretionary functions are entitled to qualified immunity from liability for civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In considering whether an official is entitled to qualified immunity, the first question a court must answer is "whether a constitutional right would have been violated on the facts alleged" by the plaintiff.  *Saucier v. Katz*, 533 U.S. 194, 200 (2001).  If so, the court must then determine whether the right asserted was clearly established at the time of the alleged violation.  *See id*.  In answering this latter question, the relevant inquiry is whether "the right was sufficiently clear that a reasonable officer would understand that what he is doing violates that right."  *Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001) (alteration and quotations omitted).

Our jurisdiction to review an order denying summary judgment on the basis of qualified immunity stems from 28 U.S.C. § 1291, which permits us to consider appeals from "final decisions" of the district court.  Although the denial of

summary judgment is an interlocutory order not ordinarily subject to immediate appellate review under § 1291, the Supreme Court has held that the denial of summary judgment based on qualified immunity falls within the collateral-order exception to that statute. *See Mitchell v. Forsyth*, 472 U.S. 511, 526–27 (1985). Our jurisdiction over such orders, however, is not without limit: we may consider a qualified-immunity appeal only to the extent it turns on a matter of law. *See Johnson v. Jones*, 515 U.S. 304, 313 (1995). Reviewable issues of law include whether the right the defendant allegedly violated was "clearly established" at the time of the violation, *see Behrens v. Pelletier*, 516 U.S. 299, 313 (1996), as well as whether the plaintiffs' version of the facts amounts to a constitutional violation, *see Garrett v. Stratman*, 254 F.3d 946, 952 (10th Cir. 2001) ("[W]hen the plaintiffs' allegations are taken as true, denial of summary judgment on qualified immunity resolves an abstract issue of law and is immediately appealable."); *Gross*, 245 F.3d at 1156–57. We do not have jurisdiction to resolve disputed issues of fact and have therefore observed that a defendant may not appeal the sufficiency—as opposed to the legal significance—of the plaintiff's evidence. *See Garrett*, 254 F.3d at 953 ("If we determine the district court's conclusion rests on findings of evidence sufficiency, we must dismiss for lack of jurisdiction." (quotations omitted)); *Gross*, 245 F.3d at 1156 ("Courts of appeals clearly lack jurisdiction to review summary judgment orders deciding qualified immunity questions solely on the basis of evidence sufficiency—which

facts a party may, or may not, be able to prove at trial." (quotations omitted)).

A.    Nonreviewable Questions of Fact: Claims for Coercion, Failure to
      Investigate, Fabrication of Evidence, and Malicious Prosecution

The defendants dispute the factual allegations that support Mr. Lowery's claims for coercion, failure to investigate, fabrication of evidence, and malicious prosecution. Although the defendants claim that they accept Mr. Lowery's allegations as true, the defendants in fact only cite to select portions of the record evidence and ignore the allegations as pleaded in Mr. Lowery's complaint and supported by other record evidence. Specifically, the defendants contest the nature of and circumstances surrounding the questioning that led to Mr. Lowery's confession, as well as the extent—if any—to which Mr. Lowery was in custody during the questioning. This amounts to a challenge to the sufficiency of the evidence, which presents a question of fact that we do not have jurisdiction to consider. *See Garrett*, 254 F.3d at 953; *Gross*, 245 F.3d at 1156. We therefore dismiss the defendants' appeal of the district court's denial of qualified immunity as to those claims.

B.    Reviewable Questions of Law: Claims for Loss of Familial Association and
      Supervisory Liability

      1.    *Loss of Familial Association*

A child has a constitutionally protected liberty interest in a relationship with her parent. *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 617–18 (1984)

("[C]hoices to enter into and maintain certain familial human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme. In this respect, freedom of association receives protection as a fundamental element of personal liberty."); *Trujillo v. Bd. of County Comm'rs*, 768 F.2d 1186, 1189 (10th Cir. 1985) (holding that a parental relationship is a constitutionally protected liberty interest). This right to familial association is grounded in the Fourteenth Amendment's Due Process Clause. *J.B. v. Wash. County*, 127 F.3d 919, 927 (10th Cir. 1997). To determine whether a substantive right protected by the Due Process Clause has been violated, we balance "the individual's interest in liberty against the State's asserted reasons for restraining individual liberty." *Youngberg v. Romeo*, 457 U.S. 307, 320 (1982). In addition, in *Trujillo*, we held that "an allegation of *intent* to interfere with a particular relationship protected by the freedom of familial association is required to state a claim under section 1983." 768 F.2d at 1190 (emphasis added). As a result, "'[n]ot every statement or act that results in an interference with the rights of familial association is actionable.' The conduct or statement must be directed 'at the familial relationship with knowledge that the statements or conduct will adversely affect that relationship.'" *J.B.*, 127 F.3d at 927 (internal citation omitted) (alteration in original) (quoting *Griffin*, 983 F.2d at 1548).

Here, Mr. Lowery and Amanda conceded during oral argument that,

-11-

because there is no evidence that any of the defendants directed their conduct at the familial relationship, *Trujillo* forecloses relief. They seek merely to preserve this issue for en banc review, which they claim is justified in light of more recent cases questioning *Trujillo*'s holding. *See, e.g.*, *Smith v. City of Fontana*, 818 F.2d 1411, 1420 & n.12 (9th Cir. 1987) (expressly declining to follow *Trujillo* and holding that the facts giving rise to a plaintiff's claim for excessive use of force by the police also "give[] the [plaintiff's] children a substantive due process claim based on their loss of his companionship"), *overruled on other grounds by Hodgers-Durgins v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999) (en banc). Because *Trujillo* remains the law of this Circuit, however, the defendants are entitled to qualified immunity on Mr. Lowery's and Amanda's claim for loss of familial association.

2. *Supervisory Liability*

A supervisor may be held liable under § 1983 for the acts of his subordinate only if the plaintiff shows that the subordinate violated the Constitution and that there is an affirmative link between the supervisor and the violation—"namely the active participation or acquiescence of the supervisor in the constitutional violation by the subordinate[]." *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006). The defendants argue that Officers Steven French, Larry Woodyard, and Alvan Johnson are not liable as supervisors or coconspirators under § 1983 because Mr. Lowery has failed to allege sufficient facts to establish

that their subordinates, Officers Harry Malugani and Douglass Johnson, violated his constitutional rights. But the district court concluded that Mr. Lowery stated claims against Officers Malugani and Johnson for coercion, failure to investigate, fabrication of evidence, and malicious prosecution. Because we have not disturbed these rulings on appeal, Mr. Lowery's supervisory and conspiracy claims must also survive summary judgment. To the extent the supervisory and conspiracy claims are premised on Mr. Lowery's and Amanda's loss of association claim, however, Mr. Lowery has failed to allege the violation of a constitutional right. Qualified immunity therefore shields the supervisors from liability on the basis of that claim.

## III. CONCLUSION

We DISMISS for lack of jurisdiction the defendants' appeal of the denial of qualified immunity as to the claims for coercion, failure to investigate, fabrication of evidence, and malicious prosecution. We REVERSE the district court's denial of qualified immunity as to Mr. Lowery's and Amanda's claim for loss of familial association. We AFFIRM in part and REVERSE in part the district court's denial of qualified immunity as to the supervisory liability claims. Finally, we GRANT the defendants' motion to supplement the record on appeal.