FILED
United States Court of Appeals
Tenth Circuit

July 28, 2008

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

LYNN BUCK; ALMA ROSA
SILVA-BANUELOS; DENIS
DOYON; JENNIE LUSK, next friend
of Lucy Gilster; BRIAN HANEY;
LISA KISNER, next friend of Alicia
Kisner; MICHAEL KISNER; LANE
LECKMAN; MARIA SANTELLI;
SUSAN SCHUURMAN; CHRISTINA
MAY TRAFTON; CURTIS
TRAFTON; NICK
WECHSELBERGER,

        Plaintiffs - Appellees,

  v.

CITY OF ALBUQUERQUE; MARTIN
CHAVEZ, Mayor; RAY SCHULTZ,
Deputy Chief of Police; JOHN
GONZALES, in their official and
individual capacity; RAYMOND
DEFRATES; JAMES LEROY FOX;
DANIEL S. MAGETTERI; JAMES
MONTOYA; SHAWN O'CONNELL,
Sgt.; NICK GONZALES; PABLO A.
PADILLA,

        Defendants,

    and

MICHAEL FISHER; ALLEN S.
HANCOCK; JAMES PERDUE;
STEVE HILL, Sgt.; CHARLES
LOPEZ,

        Defendants - Appellants.

No. 07-2117
(D. New Mexico)
(D.C. No. 04-CV-1000-JAP/DJS)

---

**ORDER AND JUDGMENT**[*]

Before **HENRY**, Chief Judge, **BRISCOE**, and **HOLMES**, Circuit Judges.

Sixteen plaintiffs, who were participating in an antiwar rally, brought this action against various officers with the Albuquerque Police Department ("APD"), their supervisors, and the Mayor and the City of Albuquerque, alleging constitutional violations under 42 U.S.C. § 1983 as well as state law tort claims. The defendants-appellants in this appeal are five individual officers ("the Officers") who assert that they are entitled to summary judgment on plaintiffs' § 1983 First Amendment deprivation claim. Exercising circumscribed jurisdiction over this interlocutory appeal pursuant to *Mitchell v. Forsyth*, 472 U.S. 511 (1985), we affirm the district court's denial of summary judgment to the Officers.

## I. FACTUAL BACKGROUND

We have outlined the historical facts preceding the March 20, 2003, antiwar protest in our recent opinion in *Fogarty v. Gallegos*, 523 F.3d 1147, 1150-51 (10th Cir. 2008), and we need not repeat them in full here. As noted in *Fogarty*, "the parties vigorously dispute significant details surrounding the actions of the

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

APD, [plaintiffs], and other protesters . . . . [and] [w]e thus set forth a general description of events here, but discuss the district court's factual findings as we address defendants' specific contentions." *Id.*

> In the days leading up to the March 2003 invasion of Iraq, the area of downtown Albuquerque near the University of New Mexico ("UNM") campus became home to several antiwar protests. Protest leaders planned a demonstration for March 20, 2003, the day after the United States invaded Iraq, and met beforehand with the APD to discuss logistics. The protest was to take place in part on UNM property, where protests were allowed on its campus without restriction under the university's policy, but also on the city streets, where defendants claim that city and state law requires permits for large gatherings or marches. Although the protesters had not obtained a permit, APD coordinated with protest leaders and planned to close one lane of the street adjacent to the UNM bookstore, where the organizers planned to gather, if necessary. The exact nature and extent of APD's acquiescence to the protest [are] disputed by the parties.

> Around 5:00 p.m. that evening, a crowd gathered on the UNM campus to express opposition to the war. [] Captain John Gonzales supervised the APD response, consisting of up to 75 officers and including SWAT teams, equine units, canine units, traffic officers, and a bomb squad. Later, John Gonzales also mobilized Emergency Response Teams ("ERTs"). Members of SWAT and ERT wore face-concealing gas masks, and ERT uniforms did not have any identifying marks such as the officers' names or badge numbers. [Plaintiffs] allege[] that officers wearing standard uniforms concealed their badge numbers with tape.

> At the protest's peak, between 500 and 1000 individuals were present, spilling over onto Albuquerque city sidewalks fronting UNM and eventually filling the crosswalks of adjacent streets. According to APD, the protesters' occupation of the crosswalks effectively blocked all traffic on Central Avenue, the street running past the bookstore. To ensure the crowd's safety, APD closed the street just east of the bookstore. After the street was closed, the crowd flooded into the rest of the street. The protesters then began moving west on Central Avenue. Eventually, they encountered a police skirmish line blocking

> the avenue, at which point they turned around and began walking east, back toward the bookstore.

*Id.* at 1150-51 (footnote omitted).

The Officers maintained that the protestors failed to heed repeated warnings to clear the streets and disperse. Captain Gonzales ordered the use of tear gas to clear the street and ordered the confiscation of several protestors' drums, because the drums were hindering communication. Several protestors were arrested.

While near the intersection of Central Avenue and Cornell Drive, Sergeant Hill and Officer Lopez tossed tear gas canisters into the crowd. Captain Gonzales, Officer Lopez, and Officer Hancock followed with a second volley. Officer Fisher or Officer Perdue used a pepperball gun to shoot pepperball projectiles at plaintiffs Camille Chavez and Michael Kisner, and Officer Perdue apparently similarly shot some unknown protestors with pepperball rounds. Plaintiffs contend that this use of force to break up the protest violated their First Amendment rights to freedom of expression and assembly.

The plaintiffs filed suit in New Mexico state court, raising a host of claims. Certain City of Albuquerque defendants removed the suit to federal district court. As to the First Amendment claim at issue, the plaintiffs alleged that the Officers violated their rights to freedom of speech and prevented their peaceful assembly.

In response, the Officers emphasized that their actions were not motivated as a response to the protestors' opinions, their opposition to the war, or to the statements directed to the officers. Aplts' App. vol. II, doc. 9, at 289-90. The Officers "were motivated solely by their duty to enforce [state and city] laws." *Id.*

In its order, the district court dismissed most of plaintiffs' claims against the Officers. The district court analyzed plaintiffs' First Amendment retaliation claim against the Officers under the rubric of *Worrell v. Henry*, 219 F.3d 1197 (10th Cir. 2000), which holds that plaintiffs must prove:

> (1) that the plaintiffs were "engaged in constitutionally protected activity"; (2) that the defendant[s'] actions caused the plaintiff "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity"; and (3) that the "defendant[s'] adverse action was substantially motivated as a response to the plaintiff[s'] exercise of constitutionally protected conduct."

219 F.3d at 1212. The district court determined there was "no question" that plaintiffs satisfied prong (1) (protesting the government's decision to go to war is a constitutionally protected activity); and prong (2) (the use of tear gas, pepper spray and physical force to disperse plaintiffs and protestors "could have chilled a person of ordinary firmness from continuing to participate in the demonstration." Aplts' App. vol. VIII, doc 47, at 2038. Recognizing that a determination of the third *Worrell* element – the officers' motivation – lodged it in deep water, the court concluded there existed genuine issues of material fact as to the Officers'

motivation, denied summary judgment and also determined the Officers were not entitled to qualified immunity on this claim.

The Officers timely appealed. The plaintiffs filed a motion in the district court to certify that the Officers' interlocutory appeal was frivolous. The court seemed inclined to agree, noting that the Officers "contest only the sufficiency of the evidence offered . . . in response to [their] factual assertions, and thus do not fall into the category of qualified immunity rulings that are immediately appealable." Aples' App. doc. 10, at 67. Because the court knew that co-defendant Captain John Gonzales's appeal was also pending, it ultimately decided "it would be impractical to proceed immediately to trial . . . . [b]ecause there are overlapping issues, evidence, and witnesses between [p]laintiffs' claims against Defendant Gonzales the [Officers]." *Id.* at 69. Thus, although the court concluded that "there appears to be no proper basis for the . . . Officers to appeal the Court's denial of summary judgment," it did not certify the appeal as frivolous. *Id*; *see Stewart v. Donges*, 915 F.2d 572, 576 (10th Cir. 1990) (noting that "a finding of frivolousness enable[s] the district court to retain jurisdiction and to proceed to trial absent intervention by the court of appeals").

## II. DISCUSSION

The Officers now concede that their use of tear gas and pepperball rounds directly affected certain plaintiffs. However, they challenge the conclusion that their actions, even "assuming an improper motive," directly affected those

plaintiffs who did *not* witness or could not have witnessed the Officers' actions.

Aplts' Br. at 28. As such, the Officers argue they are entitled to qualified

immunity with respect to such plaintiffs. The appellees argue that, despite the

non-presence of certain plaintiffs, the word spread; these plaintiffs knew of the

Officers' aggressive actions at other places along the route, and these plaintiffs

were thus chilled.

A. Jurisdiction

Of course, "w[e] have jurisdiction to determine our jurisdiction." *Schroeck*

*v. Gonzales*, 429 F.3d 947, 950 (10th Cir. 2005). But, in the matter of an

interlocutory appeal raising qualified immunity, our jurisdiction is quite limited.

As in *Fogarty*,

> [b]efore turning to the merits of this appeal, we must first address the
> extent of our jurisdiction over the issues presented. Although orders
> denying summary judgment are ordinarily not appealable, we have
> interlocutory jurisdiction over denials of qualified immunity at the
> summary judgment stage to the extent that they "turn[ ] on an issue of
> law." *Mitchell*, 472 U.S. at 530. Under this limited jurisdiction, we
> may review the district court's abstract legal conclusions, such as
> whether the law was clearly established at the time of the alleged
> infraction. *See Behrens v. Pelletier*, 516 U.S. 299, 313 (1996). At this
> stage, however, *we are not at liberty to review a district court's factual
> conclusions, such as the existence of a genuine issue of material fact for
> a jury to decide, or that a plaintiff's evidence is sufficient to support a
> particular factual inference. . . .* Those facts explicitly found by the
> district court, combined with those that it likely assumed, then form the
> universe of facts upon which we base our legal review of whether
> defendants are entitled to qualified immunity.

523 F.3d at 1153 (certain citations and footnote omitted) (emphasis added); *Lowery v. County of Riley*, 522 F.3d 1086, 1091 (10th Cir. 2008) ("We do not have jurisdiction to resolve disputed issues of fact and have therefore observed that a defendant may not appeal the sufficiency–as opposed to the legal significance–of the plaintiff's evidence."). "Our jurisdiction also extends to situations where a defendant claims on appeal that accepting the plaintiff's version of the facts as true, he is still entitled to qualified immunity." *York v. City of Las Cruces*, 523 F.3d 1205, 1209 (10th Cir. 2008). We note that, "[u]sually, if the law was clearly established at the time of the relevant events, the qualified immunity defense will fail." *Mimics, Inc. v. Village of Angel Fire*, 394 F.3d 836, 842 (10th Cir. 2005) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982)).

B. Standard of Review

"We review the denial of a summary judgment motion raising qualified immunity questions de novo[,]" *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001), and "construe the record in the light most favorable to the nonmoving party." *Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1258 (10th Cir. 2008). And generally, "in an interlocutory appeal we must accept a district court's determination that the evidence is sufficient to support a particular factual inference, and its closely related conclusion that genuine issues of fact exist for

trial." *Fogarty*, 523 F.3d at 1155 (citing *Cortez v. McCauley*, 478 F.3d 1108, 1121 n.16 (10th Cir. 2007) (en banc)).

C. Analysis

Our *Worrell* inquiry revolves around the evidence supporting (1) that plaintiffs were engaged in constitutionally protected activity; (2) whether defendants caused the plaintiffs to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) whether defendants' actions were motivated by plaintiffs' protected activity. 219 F.3d at 1212. The Officers do not challenge that the plaintiffs were engaged in constitutionally protected conduct. As to causation, the district court found that the Officers' "use of tear gas, pepper spray, and physical force to disperse [p]laintiffs could have chilled a person of ordinary firmness from continuing to participate in the demonstration." Aplts' App. vol. VIII, doc. 47, at 2038.

On appeal, the Officers attempt to frame their argument in terms of the district court's having erred as a matter of law in its determination that each of the plaintiffs established the Officers violated their clearly established constitutional rights. Specifically, they argue that certain plaintiffs cannot establish that the Officers' "conduct *caused* them to suffer an injury . . . that would chill a person of ordinary firmness from continuing to exercise his or her

constitutional rights." Aplts' Br. at 32 (emphasis added).[2]  First, the Officers

contend that Officer Hill's, Officer Lopez's, and Officer Hancock's  use of tear

gas could not have harmed Ms. Silva-Banuelos, Ms. Trafton, or Mr. Trafton,

because they were not located near the intersection of Central Avenue and Cornell

Drive when the tear gas was deployed.  Second, the Officers maintain that the

plaintiffs did not provide evidence that demonstrated that Officer Perdue's use of

pepperball rounds against an unknown protestor caused them an injury.  Third, the

Officers argue that the plaintiffs other than Ms. Chavez and Mr. Kisner have not

---

[2]     It is discouraging that the bulk of the Officers' arguments are fleshed out in
their Reply Brief, giving the plaintiffs little chance to respond to specific
arguments.  The Officers also curiously argue that because the district court
determined there was sufficient evidence of causation, that they may appeal this
finding as it is a legal, not factual one.  However, we are unable to review a
finding of sufficiency of the evidence in the context of this appeal.  *See Lowery*,
522 F.3d at 1091 (noting that in this type of interlocutory appeal "a defendant
may not appeal the sufficiency . . . of the plaintiff's evidence").

The Officers also contend that the "district court resolve[d] individual
claims with immaterial evidence," Reply Br. at 7, and that their challenges to the
materiality of the evidence are legal challenges.  This argument lacks force, and
we decline to address it, as the Officers did not present it in their opening brief.
*Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000) (raising issue for first time in
reply brief "robs the appellee of the opportunity . . . to present an analysis of the
pertinent legal precedent that may compel a contrary result").  Moreover, as in
*Fogarty*, our analysis would "necessarily disregard those facts which have no
bearing on our legal conclusions as we 'examin[e] the facts presented on
summary judgment in the light most favorable to the plaintiff, to determine
whether they amount to a violation of a clearly-established right.'" *Fogarty*, 523
F.3d at 1154 n.7 (alteration in original) (quoting *Walker v. City of Orem*, 451 F.3d
1139, 1155 (10th Cir. 2006)).

established that Officer Fisher's use of pepperball rounds against Ms. Chavez and Mr. Kisner caused them to suffer any injury.

The fatal problem with the Officers' argument is that they did not challenge the second *Worrell* element, that of causation, below. *See* Aplts' App. vol. II, doc. 9, at 288-90. Because the challenge to causation was not raised previously, the plaintiffs' response could not be evaluated, and the district court did not have the opportunity to consider the argument.[3]

"In the main, . . . we have consistently refused invitations to consider new issues on appeal. We have therefore repeatedly stated that a party may not lose in the district court on one theory of the case, and then prevail on appeal on a different theory." *Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 721 (10th Cir. 1993). Nor will we consider a new theory on appeal, even if it falls under the same general category as an argument raised below. *Bancamerica Commercial Corp. v. Mosher Steel of Kan., Inc.*, 100 F.3d 792, 798-99 (10th Cir.), *amended on*

---

[3] The district court carefully weighed the evidence and concluded that although the Officers argued their actions were based solely upon their duty to enforce the law, the plaintiffs presented sufficient evidence that the Officers intended to end the protest altogether, and harbored retaliatory motives in so doing. Aplts' App. vol. VIII, doc. 47, at 2038-40. The court concluded that there existed genuine issues of material fact that a jury must resolve as to the Officers' motivation. The Officers wisely chose not to challenge this conclusion on appeal, and even couch their argument "assuming [their] improper motive." Aplts' Br. at 28. Likely, the Officers did not challenge the district court's conclusion because our limited jurisdiction leaves us unable to review the district court's conclusion as to "the existence of a genuine issue of material fact for a jury to decide." *Fogarty*, 523 F.3d at 1154.

*other grounds*, 103 F.3d 80 (10th Cir. 1996). While we have recognized exceptions to this general rule, the exceptions are rare and generally limited to cases involving questions of jurisdiction, sovereign immunity, or questions of law that we felt had to be addressed to prevent a miscarriage of justice. *Hicks v. Gates Rubber Co.*, 928 F.2d 966, 970 (10th Cir.1991); *see also Lyons*, 994 F.2d at 721 (observing that we "hear issues for the first time on appeal only in the most unusual circumstances"). The decision to take up questions for the first time on appeal is left primarily to this court's discretion, based on the facts of the individual case before us. *Singleton v. Wulff*, 428 U.S. 106, 121 (1976).

## III. CONCLUSION

Because the Officers failed to raise their arguments as to the sufficiency of the evidence as to causation before the district court, we must AFFIRM the district court's denial of summary judgment and denial of qualified immunity.

Entered for the Court


Robert H. Henry
Circuit Judge

-12-