**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 7, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

BENJIE LORENZO CARDENAS and
VIOLA PRIETO,

        Plaintiffs-Appellees,

v.

MATTHEW FISHER, an Officer of
the Albuquerque Police Department,
individually and in his official
capacity,

        Defendant-Appellant.

No. 08-2036

D. of N.M.

(D.C. No. CIV-06-936-JCH-RLP)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, **TYMKOVICH**, and **GORSUCH**, Circuit Judges.[**]

---

    Matthew Fisher, an Albuquerque Police Department officer, asserts he is

entitled to qualified immunity from a claim brought by Benjie Lorenzo Cardenas

---

    [*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

    [**] Upon Appellant's motion and after examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The cause therefore was ordered submitted without oral argument.

and Viola Prieto for constitutional violations under 42 U.S.C. § 1983. Fisher appeals from a district court order denying his summary judgment motion.

While we have jurisdiction to review interlocutory appeals under 28 U.S.C. § 1291, this jurisdiction is limited to reviewing issues of law. *Hesse v. Town of Jackson*, 541 F.3d 1240, 1244 (10th Cir. 2008). Because Fisher raises only sufficiency of the evidence issues, we DISMISS his appeal for lack of jurisdiction.

## I. Background

The following facts are set forth in the light most favorable to Cardenas and Prieto as the nonmoving parties. *See Lowery v. County of Riley*, 522 F.3d 1086, 1088 (10th Cir. 2008).

Late in the evening on December 3, 2005, Officer Fisher stopped a Honda Civic after it ran a stop sign near an apartment complex. The Civic's driver produced a driver's license with the name Isaac Romero, but he lacked any proof of insurance or registration. The driver's license photograph depicted a "Hispanic male with short, dark brown hair, a goatee, and a mustache," and the license indicated the driver was 5'8" tall. R., Doc. 71 at 2 (Dist. Ct. Order). The driver told Fisher he lived in the neighborhood, but the address on the license was not nearby. In addition, the driver appeared to be drunk and was slurring his words.

Fisher took the driver's keys, placed them on the trunk of the Civic, and returned to the patrol car to begin his paperwork. While Fisher was writing the

-2-

citation, the driver exited the car, grabbed the keys off the trunk, and ran toward the nearby apartment complex. Fisher reported what happened on his police radio and within five minutes two additional officers arrived. Together the officers knocked on doors in the apartment complex and questioned the residents about the person pictured on the confiscated driver's license.

Prieto and her adult son, Cardenas, lived in separate apartments in this complex. At the time of this incident, Cardenas was in his mother's apartment helping with Christmas decorations. Approximately ten minutes after the driver fled from the Civic, the officers knocked on the door of Prieto's apartment and Cardenas answered. Cardenas was a "Hispanic male with dark hair, a haircut similar to [the] driver's license photograph, and a mustache." R., Doc. 71 at 3–4.

Unlike the driver of the Civic, though, Cardenas was 5'10" tall, was not wearing the clothes the driver of the Civic had been wearing, and appeared sober. Despite these differences, Fisher at first believed Cardenas was the person on the confiscated driver's license. He "grabbed Cardenas by the arms, twisted him around, and slapped him in handcuffs." *Id.* at 4. The handcuffs were "extremely, extremely tight," and Cardenas "immediately felt pain in his arm, shoulder, and back." *Id.* Despite Cardenas's complaints about the handcuffs' tightness, Fisher refused to loosen them.

Cardenas and Prieto repeatedly told Fisher that Cardenas was neither the driver nor the person on the driver's license. When the officers took Cardenas to

-3-

his apartment, he produced a birth certificate, a New Mexico driver's license, a rent receipt, and a utility bill corroborating his identity. Fisher then searched Cardenas's apartment without permission and without a warrant.

Fisher eventually concluded Cardenas was not the man on the driver's license, but still believed Cardenas was the driver who had fled. The officers transported Cardenas to the police station and charged him with concealing identity, eluding a police officer, improper use of a license plate, and failure to register and maintain insurance. He was not charged with running a stop sign or for driving while intoxicated. Another officer released the handcuffs at the police station and reportedly observed that "[t]hose cuffs are on way too tight." *Id.* at 6. Cardenas himself indicated he "was in physical discomfort on his whole left side, from his shoulder to his lower back, while in the squad car and at the jail." *Id.*

The district court found that sufficient evidence supported the claim that Cardenas "sustained injuries as a result of the handcuffing, including bruises and abrasions around his wrists." *Id.* According to the district court, "Cardenas sought medical attention for his injuries a week or two after the incident and maintains that he was unable to work for approximately two months." *Id.* Cardenas was eventually acquitted on all charges, and following his acquittal he and Prieto brought this § 1983 suit against Fisher in federal court.

Fisher moved for summary judgment, claiming qualified immunity protected him from Cardenas's unlawful arrest and excessive use of force claims.

-4-

The district court denied Fisher's summary judgment motion, and he now appeals that denial.[1]

## II. Discussion

Qualified immunity protects public officials "from undue interference with their duties and from potentially disabling threats of liability." *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982). Plaintiffs seeking to overcome a qualified immunity defense must show that (1) the defendant violated a constitutional or statutory right, and (2) the right was clearly established at the time of the defendant's unlawful conduct. *Mecham v. Frazier*, 500 F.3d 1200, 1204 (10th Cir. 2007). In denying Fisher's summary judgment motion, the district court found Cardenas asserted sufficient facts that, if true, would constitute a violation of a clearly established constitutional right.

Before we can turn to the merits of Fisher's interlocutory appeal, we must first address the extent of our jurisdiction. A district court's denial of a claim of qualified immunity is an immediately appealable final decision under 28 U.S.C. § 1291 to the extent the appeal "turns on an issue of law." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). While we may review the district court's legal conclusions, we lack jurisdiction to review factual conclusions such as the

---

[1] Fisher also sought summary judgment on additional state law tort claims brought by Cardenas and Prieto. He was unsuccessful, however, and does not appeal the disposition of those claims.

-5-

existence of a genuine issue of material fact, or whether a plaintiff's evidence is sufficient to support a particular factual inference. *Fogarty v. Gallegos*, 523 F.3d 1147, 1153 (10th Cir. 2008) (citing *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996), and *Johnson v. Jones*, 515 U.S. 304, 316 (1995)). Indeed, our review at this point must "scrupulously avoid second-guessing the district court's determinations regarding whether [plaintiffs have] presented evidence sufficient to survive summary judgment." *Clanton v. Cooper*, 129 F.3d 1147, 1153 (10th Cir. 1997).

As we explain in more detail below, Fisher requests that we review the record and separately weigh the sufficiency of Cardenas's proffered evidence—precisely what we are jurisdictionally prohibited from doing. Fisher argues that when properly reviewed, the facts show neither unlawful arrest nor excessive force. Regardless of the merits of these arguments, the Supreme Court's decisions in *Behrens* and *Johnson* are clear that we simply lack jurisdiction to consider them at this interlocutory stage.

## A.  Unlawful Arrest

Fisher claims he is entitled to qualified immunity since he reasonably believed Cardenas had committed a crime when the arrest occurred. His reasonable belief would provide the probable cause needed to make the arrest lawful. *See Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995).

But the problem here is that Fisher fails to make a *legal* argument that the facts Cardenas asserts, even if true, do not amount to a constitutional violation. Instead, he essentially disagrees with the district court's conclusions that disputed facts remain for a jury on the probable cause question and that, "[o]n the facts as alleged by Plaintiff Cardenas, a reasonable officer in Defendant Fisher's position . . . would not have believed he had probable cause to suspect that it was Plaintiff Cardenas he had stopped." R., Doc. 71 at 14 (Dist. Ct. Order). Fisher argues the district court improperly credited the testimony of certain eyewitnesses, failed to consider trustworthy identifying information Fisher had at the time, and failed to account for the similarities in appearance between the driver and Cardenas that would have made a mistake of identity reasonable.

These arguments relate to the sufficiency of the evidence, however, and we have no jurisdiction to address them in this interlocutory context. *See Behrens*, 516 U.S. at 313 ("[D]eterminations of evidentiary sufficiency at summary judgment are not immediately appealable merely because they happen to arise in a qualified-immunity case."). Because jurisdiction is wanting, we must dismiss the unlawful arrest argument.

**B. Excessive Force During Arrest**

Fisher next challenges the district court's denial of qualified immunity on the excessive force claim. He argues the amount of force used in arresting and handcuffing Cardenas was objectively reasonable.

"We analyze whether the force used to effectuate an arrest violates an individual's Fourth Amendment rights under the 'objective reasonableness' standard of the Fourth Amendment." *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1220 (10th Cir. 2005) (quoting *Graham v. Connor*, 490 U.S. 386, 388 (1989)). This reasonableness inquiry turns on several factors, including the alleged crime's severity, the threat a suspect poses, and the suspect's efforts to resist or evade arrest. *Id.* In essence these factors "evaluate[] the force used in a given arrest or detention against the force reasonably necessary to effect a lawful arrest or detention under the circumstances of the case." *Cortez v. McCauley*, 478 F.3d 1108, 1126 (10th Cir. 2007). Unduly tight handcuffing can constitute excessive force if a plaintiff alleges: (1) "some actual injury that is not *de minimis*, be it physical or emotional," and (2) that the officer ignored the "plaintiff's timely complaints . . . that the handcuffs were too tight." *Id.* at 1129.

After applying these principles, the district court concluded that disputed facts existed relating to whether the amount of force used to effectuate the arrest was reasonable in these circumstances. Accepting Cardenas's allegations as true, though, the district court concluded sufficient facts existed for a constitutional excessive force claim. In finding that Cardenas alleged more than a *de minimis* injury, the court noted the significant pain he experienced while handcuffed, his need to seek medical attention for his wrists, and his inability to work "for two months as a result of his injuries." R., Doc. 71 at 19 (Dist. Ct. Order).

-8-

Fisher's interlocutory challenge to the excessive force ruling suffers the same deficiencies as his challenge to the unlawful arrest ruling. In essence he asks us to reweigh the evidence and find that Fisher used an objectively reasonable amount of force to effect Cardenas's arrest. As we have already indicated, jurisdictional limits prevent us from reaching this factual question.[2] Because Fisher asserts no cognizable legal challenge regarding the *de minimis* nature of the injury, we need not address the district court's conclusion that the facts alleged meet the *de minimis* standard imposed by *Cortez*. And, as the district court notes, any dispute about the seriousness of these alleged injuries, including medical and work records, will be fair game for trial. At that point "Cardenas will be required to come forward with evidence sufficient to prove actual injury that is not *de minimis*." *Id.* at 20; *see also Fogarty*, 523 F.3d at 1159 (we are free to reconsider the record on appeal after trial to determine if the facts establish entitlement to qualified immunity).

Because jurisdiction is wanting, we must also dismiss Fisher's argument against the excessive force claim.

---

[2] Fisher's brief does have a section title indicating that "as a matter of law," Cardenas "fail[ed] to establish an excessive force claim." Aplt. Br. at 23. Instead of making a legal argument, though, this section focuses on whether the district court was correct in finding Cardenas missed two months of work in the absence of "any medical diagnosis or recommendation from Cardenas's treating physician." *Id.* at 24. We decline to treat this argument as challenging the district court's determination of a matter of law.

\* \* \*

In sum, arguments challenging the factual sufficiency of the district court's ruling dominate Fisher's appeal.  Bound by clear authority from both our circuit and the Supreme Court's decisions in *Behrens* and *Johnson*, we simply lack jurisdiction to consider such arguments at this interlocutory stage.

## III.  Conclusion

For the foregoing reasons, we DISMISS Fisher's interlocutory appeal.


Entered for the Court,

Timothy M. Tymkovich
Circuit Judge