**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 12, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

TOMMY BRADEN,

     Plaintiff - Appellant,

v.

JOHN DAVIS, in his individual and
official capacities; CHRISSIE
UNDERWOOD,

     Defendants - Appellees.

No. 15-5046
(D.C. No. 4:13-CV-00693-GKF-FHM)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **KELLY**, **PORFILIO**, and **BALDOCK**, Circuit Judges.
_____

Tommy Braden appeals the district court's grant of summary judgment in

favor of John Davis and Chrissie Underwood on his civil rights claims under

42 U.S.C. § 1983 alleging wrongful arrest and malicious prosecution, his state-law

claims alleging negligence and wrongful imprisonment, and his claim under the

Oklahoma state constitution. Exercising jurisdiction under 28 U.S.C. § 1291, we

affirm.

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

This case arises from Braden's arrest and detention following the rape of his girlfriend's four-year-old daughter, K.B.[1]  K.B. lived with her mother, her younger brother, and Braden, whom she called "Daddy" and sometimes "Tommy," in a trailer home in Creek County, Oklahoma.  K.B. was sexually assaulted in her bedroom sometime during the night of April 6, 2012.  Braden reported the rape to the Creek County Sheriff's Department ("CCSD") the next morning.  Deputy Underwood arrived at the scene, followed by Deputy Sheriff Davis, who ultimately served as lead investigator on the case.[2]  Braden cooperated with the investigation, providing a statement at the scene and permitting photographs of his body.  Later the same day, Braden gave another, consistent statement to Davis at the CCSD.  He also voluntarily provided a DNA sample, which Davis submitted to the CCSD's property officer for processing.

K.B.'s vaginal injuries required surgery.  At the hospital, K.B. told her mother "that man" had ripped her nightie, and when asked "What man?," K.B. answered, "Tommy."  Aplt. App., Vol. I at 102-03 (internal quotation marks omitted).  K.B.'s mother repeated K.B.'s comments to Underwood, indicating that "Tommy" meant Braden.  *See id.* at 107.  After K.B.'s surgery, a police detective interviewed her about the sexual assault (hereafter, "forensic interview").  After reviewing the transcript of K.B.'s forensic interview, Davis arrested Braden without a warrant on one count of child sexual abuse.

---

[1] Braden and K.B.'s mother have since married.

[2] Davis was later elected Creek County Sheriff.

2

Davis completed a probable cause affidavit ("PCA"), in which he stated, among other things, "It was noticed that the window on the North end of the residence had been broken out and appeared to have been broken from the inside out. Your affiant found no evidence that entry or exit had been made via the broken window." *Id.* at 113. Davis further stated that pajamas recovered from K.B.'s bedroom "were found to have been cut or ripped up the back portion." *Id.* at 114. Davis noted in the PCA that Braden maintained his innocence.

Davis also described K.B.'s forensic interview in the PCA. He indicated that K.B. had nodded her head yes when asked if anything had happened with her "butt" or her "cee cee" (the latter being K.B.'s word for her vaginal area). *Id.* He described K.B. as appearing uncomfortable and withdrawn when asked if she would tell about that incident. But Davis noted that K.B. had ultimately stated during the forensic interview that the incident happened when she was inside her house, in her bedroom. When asked if her clothes were on or off when someone "messed with her parts," K.B. replied "off." *Id.* K.B. was asked if anyone scares her, to which she replied "Daddy." *Id.* She also answered Daddy when asked who was in her room, and went on to disclose that Daddy had put a hole in her wall. When asked what Daddy was wearing, she said he wasn't wearing anything and that he was naked. K.B. was asked where she was when Daddy came into her room. She replied that she was in bed lying on her belly and her clothes were off. Davis stated that K.B. further disclosed that Daddy ripped her nightie. A judge signed off on the PCA submitted by Davis.

3

The CCSD's property officer submitted the DNA samples related to K.B.'s sexual assault to the Oklahoma State Bureau of Investigation ("OSBI") on May 17, 2012. An OSBI criminologist began working on the case on June 20 or 21. On July 2, the DNA test results excluded Braden as the rapist, and he was released from custody the next day, eighty-four days after his arrest. On July 5, OSBI matched the DNA evidence to an individual who lived in the same trailer park as Braden and was listed on the violent offender registry. That individual was later charged and convicted of raping K.B.

Braden filed this action naming Davis in his individual and official capacities and Underwood in her individual capacity. Both defendants moved for summary judgment, which the district court granted on all claims.

On Braden's § 1983 claims, the court first held that

> a reasonable officer objectively considering the totality of the circumstances, including K.B.'s statements to [her mother and in the forensic interview], the torn garments found in K.B.'s bedroom, the location of the broken glass, and the lack of evidence that someone had entered or exited the home through the broken window, would have been warranted in believing Braden had committed the crime. Probable cause therefore existed for Braden's arrest, and Davis did not violate Braden's Fourth Amendment rights by placing him under arrest.

*Id.*, Vol. IV at 566-67. The court further held that Davis did not knowingly or recklessly make false statements in the PCA, nor did he knowingly or recklessly omit information which, if included, would have vitiated probable cause. It concluded that Braden failed to "raise[] a genuine issue of material fact that probable cause was lacking for his arrest, much less that Davis acted with malice in preparing the

4

probable cause affidavit." *Id.* at 570. The court therefore granted summary judgment against Braden on his § 1983 wrongful arrest and malicious prosecution claims. And having found that Braden failed to meet his burden to show that defendants violated his constitutional rights, the district court also granted them qualified immunity on Braden's individual-capacity claims. The court also granted summary judgment against Braden on his § 1983 claims against Davis in his official capacity as the Creek County Sheriff, holding these claims failed where there was no underlying constitutional violation by any individual officer.

The court additionally granted summary judgment against Braden on his state-law claims. It held that the Oklahoma Governmental Tort Claims Act ("OGTCA") shields defendants from liability in their individual capacities. The court concluded the proper defendant in a claim under the OGTCA is the state or a political subdivision—in this case, the Board of County Commissioners of Creek County. It rejected Braden's argument that, in naming Davis in his official capacity, he had effectively designated Creek County as the defendant. Lastly, the court held that Braden could not bring a claim against a governmental entity under the state constitution when a cause of action under the OGTCA is available.

Ultimately, the district court held that, because there was probable cause supporting Braden's arrest, defendants were not liable under any of his causes of action. The court added that, "[i]n so ruling, the court does not discount the nightmare Braden and his family endured for eighty-four days." *Id.* at 574.

5

We review a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the non-moving party. *See Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir. 2007) (en banc). Braden argues on appeal that (1) the district court failed to view the evidence in the light most favorable to him; (2) Davis did not have reasonably trustworthy information to warrant a finding of probable cause; (3) a reasonable jury could conclude that Davis knowingly or recklessly made false statements in the PCA and omitted other information that would have vitiated probable cause; (4) the court erred in granting defendants qualified immunity and in dismissing his official capacity claim against Davis because a reasonable jury could find facts supporting a violation of his constitutional rights; and (5) he named the proper defendant on his claims under the OGTCA by suing Davis in his official capacity as Creek County Sheriff.[3]

Having reviewed this case de novo, carefully examining the parties' briefs, the record, and applicable law, we are not persuaded that the district court committed any reversible error. We therefore affirm the district court's judgment for substantially the reasons discussed in the district court's summary judgment order.

Entered for the Court

John C. Porfilio
Circuit Judge

---

[3] Braden does not advance any argument of error in the district court's grant of summary judgment and qualified immunity to Underwood.